[876 NE2d 1189, 845 NYS2d 773]

CASTALIA ORTEGA et al., Appellants, v CITY OF NEW YORK, Respondent.

Argued September 5, 2007; decided October 16, 2007

**POINTS OF COUNSEL**

*Trief & Olk,* New York City (*Barbara E. Olk* of counsel), for appellants. I. Third-party negligent spoliation is a valid cause of action. (*MetLife Auto & Home v Joe Basil Chevrolet,* 1 NY3d 478; *DiDomenico v C & S Aeromatik Supplies,* 252 AD2d 41; *Ripepe v Crown Equip. Corp.,* 293 AD2d 462, 98 NY2d 765; *Vaughn v City of New York,* 201 AD2d 556; *Weigl v Quincy Specialties Co.,* 158 Misc 2d 753; *Fada Indus. v Falchi Bldg. Co.,* 189 Misc 2d 1; *Kirkland v New York City Hous. Auth.,* 236 AD2d 170; *Bigelow v RKO Radio Pictures, Inc.,* 327 US 251; *Story Parchment Co. v Paterson Parchment Paper Co.,* 282 US 555; *Hardwood Dimension & Mouldings v Consolidated Edison Co. of N.Y.,* 77 AD2d 644, 51 NY2d 1008.) II. The elements of a cause of action for spoliation: the Court should adopt the *Hannah v Heeter* (213 W Va 704, 584 SE2d 560 [2003]) elements. III. Appellants have established the requisite elements of a cause of action for spoliation as a matter of law. (*Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.,* 90 NY2d 606; *Vetrone v Ha Di Corp.,* 22 AD3d 835; *Rebollal v Payne,* 145 AD2d 617; *Espinal v Melville Snow Contrs.,* 98 NY2d 136; *Church v Callanan Indus.,* 99 NY2d 104; *Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579; *Cabasso v Goldberg,* 288 AD2d 116; *Standard Fire Ins. Co. v Federal Pac. Elec. Co.,* 14 AD3d 213; *Cummings v Central Tractor Farm & Country,* 281 AD2d 792, 96 NY2d 896; *Puccia v Farley,* 261 AD2d 83.) IV. There are no material facts for which discovery was needed. (*Pearsall v Saracco,* 305 AD2d 650; *Spatola v Gelco Corp.,* 5 AD3d 469; *Wyllie v District Attorney of County of Kings,* 2 AD3d 714; *Nadeau v Connell,* 243 AD2d 1009.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Scott Shorr* and *Barry P. Schwartz* of counsel), for respondent.

I. Consistent with New York precedent, the Appellate Division correctly declined to recognize a third-party negligent spoliation tort. (*Sega v State of New York*, 60 NY2d 183; *Sterbenz v Attina*, 205 F Supp 2d 65; *Carella v Reilly & Assoc.*, 22 AD3d 623; *MetLife Auto & Home v Basil Chevrolet*, 303 AD2d 30, 1 NY3d 478; *Steinman v Barclays Bank*, 276 AD2d 436, 96 NY2d 818; *Weigl v Quincy Specialties Co.*, 158 Misc 2d 753; *Ripepe v Crown Equip. Corp.*, 293 AD2d 462, 98 NY2d 765; *DiDomenico v C & S Aeromatik Supplies*, 252 AD2d 41; *Vaughn v City of New York*, 201 AD2d 556; *Fada Indus. v Falchi Bldg. Co.*, 189 Misc 2d 1.) II. For sound public policy reasons, this Court should decline to recognize a new and speculative third-party negligent spoliation tort. (*Newport v Fact Concerts, Inc.*, 453 US 247; *Millard v Alliance Laundry Sys., LLC*, 20 AD3d 866; *Simet v Coleman Co., Inc.*, 8 AD3d 1038, 4 NY3d 703; *MetLife Auto & Home v Basil Chevrolet*, 303 AD2d 30; *Wilson v Beloit Corp.*, 921 F2d 765; *Howard v Lecher*, 42 NY2d 109; *Fada Indus. v Falchi Bldg. Co.*, 189 Misc 2d 1; *Lauer v City of New York*, 95 NY2d 95; *Donohue v Copiague Union Free School Dist.*, 47 NY2d 440; *Bigelow v RKO Radio Pictures, Inc.*, 327 US 251.) III. Because plaintiffs could have pursued a design defect claim even without the car, this Court need not create a new and speculative third-party negligent spoliation tort. (*MetLife Auto & Home v Basil Chevrolet*, 303 AD2d 30; *Dayal v Coinmach Indus. Co.*, 284 AD2d 206; *Otis v Bausch & Lomb*, 143 AD2d 649; *Katz v PRO Form Fitness*, 3 AD3d 474; *Kirkland v New York City Hous. Auth.*, 236 AD2d 170; *McDermott v City of New York*, 50 NY2d 211; *Coley v Michelin Tire Corp.*, 99 AD2d 795; *Iadicicco v Duffy*, 60 AD2d 905; *Speed v Avis Rent-A-Car*, 172 AD2d 267; *Longo v Armor El. Co.*, 278 AD2d 127.) IV. Any recognition of a third-party negligent spoliation tort should originate with the Legislature. (*Murphy v American Home Prods. Corp.*, 58 NY2d 293; *Matter of Barclays Bank v Hughes*, 306 AD2d 406; *Hardwood Dimension & Mouldings v Consolidated Edison Co. of N.Y.*, 77 AD2d 644; *Matter of Department of Hous. Preserv. & Dev. of City of N.Y. v Deka Realty Corp.*, 208 AD2d 37; *Krohn v New York City Police Dept.*, 2 NY3d 329; *Mon v City of New York*, 78 NY2d 309; *MetLife Auto & Home v Basil Chevrolet*, 303 AD2d 30.) V. In any event, Supreme Court correctly dismissed Castalia Ortega's purported spoliation claim because, as a matter of law, the City of New York did not owe any preservation duty to Ortega. (*Board of Educ. of Union Free School Dist. No. 2, E. Williston, Town of N. Hempstead v New York State Div. of Human Rights [Arluck]*, 44 NY2d 902; *Matter of Freudenthal v County of Nassau*, 99

NY2d 285; *Lubitz v Mehlman*, 187 AD2d 97; *Matter of Springer*, 238 App Div 305; *Mazzella v Sarvis*, 272 App Div 381; *Bingham v New York City Tr. Auth.*, 99 NY2d 355; *Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.*, 90 NY2d 606; *Rebollal v Payne*, 145 AD2d 617; *Espinal v Melville Snow Contrs.*, 98 NY2d 136.) VI. As Supreme Court properly held, the existence of material fact issues warranted denial of Manuel Peralta's summary judgment motion. (*Gerelli Ins. Agency, Inc. v Gerelli*, 23 AD3d 341; *Matter of Holtzman v Beatty*, 97 AD2d 79; *Glasser v City of New York*, 265 AD2d 526; *City of New York v Wilson & Co.*, 278 NY 86; *Gallo v Bay Ridge Lincoln Mercury*, 262 AD2d 450; *Mitchell v Maguire Co.*, 151 AD2d 355; *Groves v Land's End Hous. Co.*, 80 NY2d 978; *Thompson v Scocozza Studio Assoc.*, 86 AD2d 830; *Jamie v Jamie*, 19 AD3d 330.)

*David L. Darwin, County Attorney*, Goshen, for County of Orange and another, amici curiae. I. Recognition of an independent tort of third-party spoliation of evidence is contrary to the public policy of New York and a legislative scheme designed to limit municipal liability and protect the public fisc. (*MetLife Auto & Home v Joe Basil Chevrolet*, 1 NY3d 478; *Pelaez v Seide*, 2 NY3d 186; *Kircher v City of Jamestown*, 74 NY2d 251; *Cuffy v City of New York*, 69 NY2d 255; *O'Connor v City of New York*, 58 NY2d 184; *Amabile v City of Buffalo*, 93 NY2d 471; *Holt v County of Tioga*, 56 NY2d 414; *Barry v Niagara Frontier Tr. Sys.*, 35 NY2d 629; *Doremus v Incorporated Vil. of Lynbrook*, 18 NY2d 362; *Crair v Brookdale Hosp. Med. Ctr., Cornell Univ.*, 94 NY2d 524.) II. The creation of a new, independent tort for third-party spoliation of evidence will permanently and adversely alter the function and operation of county government, in contravention of public policy and policy of this Court to exercise judicial restraint in matters involving the allocation of municipal resources. (*Arteaga v State of New York*, 72 NY2d 212; *O'Connor v City of New York*, 58 NY2d 184; *Riss v City of New York*, 22 NY2d 579.)

*J. Wade Beltramo*, Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae. I. Recognizing third-party spoliation of evidence as an independent tort is against public policy because it will expose municipalities to substantial liability and litigation costs for performing governmental acts. (*MetLife Auto & Home v Joe Basil Chevrolet*, 1 NY3d 478; *Miller v State of New York*, 62 NY2d 506.) II. Adopting third-party spoliation of evidence will result in a considerable proliferation of plaintiff's attorneys seeking court orders

directing local governments and the State of New York to preserve evidence, wasting both government and judicial resources. III. Adopting third-party spoliation of evidence as a cause of action against local government officials would create a disincentive for property owners to take possession of their property from local governments.

## OPINION OF THE COURT

GRAFFEO, J.

In this case we address an issue left open in *MetLife Auto & Home v Joe Basil Chevrolet* (1 NY3d 478 [2004]): whether New York recognizes the tort of third-party negligent spoliation of evidence. We conclude that the tort is not cognizable in this state.

In October 2003, plaintiff Castalia Ortega purchased a 1987 Ford minivan from a private owner. She then brought the vehicle to a licensed service station for an inspection and tune-up. The day after the vehicle was serviced, while Ortega and plaintiff Manuel Peralta were traveling on Ocean Parkway in Brooklyn, Ortega smelled fumes and pulled the minivan to the side of the road. The van burst into flames, causing Ortega and Peralta to suffer severe burns.

The New York City police officers who investigated the accident contacted Ridge Transport Systems, a towing contractor, to remove the vehicle from the roadway. Ridge towed the van to its facility in Brooklyn where it remained until November 7, 2003, when it was transported to the New York City Police Department's College Point Auto Pound in Queens. Peralta's attorney attempted to inspect the vehicle while it was in Ridge's possession but was refused access because Peralta did not own the vehicle and could not produce a title document or bill of sale. Ridge explained that the van would be destroyed if not claimed by its rightful owner.

On October 31, 2003, Peralta commenced a special proceeding against Ridge and the New York City Police Department by order to show cause seeking to preclude destruction of the vehicle until it could be inspected by Peralta. Neither Ridge nor the police department opposed the application. Supreme Court issued an order on November 18, 2003 granting Peralta a period of 60 days to inspect the vehicle and precluding its alteration or destruction until completion of the inspection. The preservation order was served on Ridge and the police department. The Legal Bureau of the police department promptly forwarded a written

request, along with a copy of the court order, to the property clerk at College Point Auto Pound directing preservation of the vehicle pending Peralta's inspection.

For unknown reasons, the memo and order were either not received by the property clerk or were not properly acted upon. Instead of preserving the minivan as directed by Supreme Court, the Pound followed its ordinary procedures for the disposition of unclaimed vehicles. When the vehicle had arrived at the Pound, a Department of Motor Vehicles ownership check was conducted that revealed two owners: plaintiff Castalia Ortega and the person who sold the car to Ortega. On November 19, 2003, form letters were sent to both individuals by certified mail advising that if the owner did not contact the Pound within 15 days, the vehicle would be deemed abandoned under Vehicle and Traffic Law § 1224 and would be destroyed. The Pound received a signed return receipt from the former owner. However, the letter to Ortega, which had been directed to the address supplied on the police accident report, was returned for insufficient address. Because neither person contacted the Pound within the designated time period, the vehicle was placed in a salvage auction on December 10, 2003 and crushed for scrap metal on December 30, 2003. The Legal Bureau of the police department—which had attempted to assist Peralta's attorney in his efforts to enforce the preservation order—did not learn of the van's destruction until February 2004, at which point it notified Peralta and the court of the Pound's disposition of the vehicle.

Ortega and Peralta did not pursue a personal injury action against the Ford Motor Company, as manufacturer of the vehicle, the previous owner or the service station that had inspected the van. Instead, in July 2004, plaintiffs commenced this action against the City of New York seeking compensation for the personal injuries they sustained as a result of the automotive fire. Plaintiffs asserted two theories of recovery. First, they claimed that the City should be held liable for all damages stemming from the fire because, by destroying the vehicle, the City had breached its duty to preserve evidence, thereby committing the tort of negligent spoliation of evidence. Second, they claimed that by violating the preservation order, the City was guilty of civil contempt, rendering it liable for any damages flowing from its disregard of the court order. The City answered, asserting that plaintiffs had failed to state a cause of action for which relief could be granted and further generally denied the allegations of negligence.

Plaintiffs moved for summary judgment on liability as to both the negligent spoliation of evidence and contempt causes of action. In support of the motion, plaintiffs submitted the affidavit of an accident reconstruction expert who opined that the destruction of the vehicle and resultant inability of plaintiffs to inspect it presented a fatal obstacle to determining the cause of the fire or identifying the responsible parties. As a result of the City's negligence, plaintiffs contended they were precluded from recovering damages from any of the tortfeasors who were ultimately responsible for their injuries.

The City opposed the motion, alleging that the negligent spoliation of evidence claim was inherently speculative because inspection of the vehicle might not have revealed the cause of the fire, and that destruction of the vehicle did not necessarily preclude a viable lawsuit against the true tortfeasors. The City's expert, an automotive engineer, concluded that other methods of investigation—including the review of product design, recall information, previous lawsuits, service records and the like— might have revealed circumstantial evidence regarding the cause of the fire sufficient to support a lawsuit against the vehicle manufacturer, previous owner or the service station that inspected the vehicle.

In resolving plaintiffs' application, Supreme Court addressed whether New York recognizes negligent spoliation of evidence as an independent tort. Although it acknowledged that the tort was problematic due to the speculative nature of the causation and damages elements, the court concluded that plaintiffs stated a cognizable claim. The court nonetheless dismissed plaintiff Ortega's spoliation cause of action because she had not been a party in the special proceeding that resulted in the preservation order and therefore had not established that the City breached a duty owed to her. Peralta's motion for partial summary judgment was denied because the court found that factual issues warranted a trial. Finally, the court dismissed the contempt claim, reasoning that contempt should be adjudicated by the court that issued the preservation order within the context of the special proceeding—not by the commencement of separate litigation before a different judge.[1]

On the plaintiffs' appeal, the Appellate Division agreed that Ortega's negligent spoliation of evidence cause of action was not

---

1. Plaintiffs have not challenged the dismissal of the contempt cause of action.

viable and, after searching the record, held that Peralta's claim was also not supportable, thereby modifying the order to grant the City summary judgment dismissing that claim as well. We granted plaintiffs leave to appeal and now affirm.

When parties involved in litigation engage in the destruction of evidence, a number of remedial options are provided by existing New York statutory and common law. Under CPLR 3126, if a court finds that a party destroyed evidence that "ought to have been disclosed . . . , the court may make such orders with regard to the failure or refusal as are just." New York courts therefore possess broad discretion to provide proportionate relief to the party deprived of the lost evidence, such as precluding proof favorable to the spoliator to restore balance to the litigation, requiring the spoliator to pay costs to the injured party associated with the development of replacement evidence, or employing an adverse inference instruction at the trial of the action (*see e.g. Dorsa v National Amusements*, 6 AD3d 652 [2d Dept 2004]; *Ifraimov v Phoenix Indus. Gas*, 4 AD3d 332 [2d Dept 2004]; *Hulett v Niagara Mohawk Power Corp.*, 1 AD3d 999 [4th Dept 2003]). Where appropriate, a court can impose the ultimate sanction of dismissing the action or striking responsive pleadings, thereby rendering a judgment by default against the offending party (*see e.g. Standard Fire Ins. Co. v Federal Pac. Elec. Co.*, 14 AD3d 213 [1st Dept 2004]; *Puccia v Farley*, 261 AD2d 83 [3d Dept 1999]; *Kirkland v New York City Hous. Auth.*, 236 AD2d 170 [1st Dept 1997]).[2]

In light of the various remedies available to trial courts, we noted in *MetLife* that "[o]ne traditional method of dealing with spoliation of evidence in New York has been CPLR 3126 where sanctions, including dismissal, have been imposed for a party's failure to disclose relevant evidence" (1 NY3d at 482-483). We were asked in *MetLife* to recognize negligent spoliation of evidence as an independent tort giving rise to consequential damages but we found it unnecessary to determine whether the tort was viable because the plaintiff in that action had failed to establish a fundamental element—that the party who destroyed the evidence owed plaintiff a duty to preserve it. In this case, because Peralta demonstrated that the City had a duty arising from the preservation order to safeguard the vehicle pending

---

**2.** Discovery sanctions have also been employed against a litigant who had an opportunity to safeguard evidence but failed to do so (*see e.g. Amaris v Sharp Elecs. Corp.*, 304 AD2d 457 [1st Dept 2003], *lv denied* 1 NY3d 507 [2004]).

his inspection, we must resolve the specific issue of whether a third-party spoliation of evidence claim is cognizable in New York.

An independent tort arising from the spoliation of evidence was first recognized in 1984 by a California intermediate appellate court (*see Smith v Superior Ct.*, 151 Cal App 3d 491, 198 Cal Rptr 829 [2d Dist 1984]). Following *Smith*, several other jurisdictions embraced the tort, although there is little consensus regarding its elements. For example, some courts allow recovery only when a plaintiff in a spoliation claim can establish that the destruction of evidence was malicious or that the spoliator's actions were motivated by an intent to disrupt the underlying litigation (*see e.g. Torres v El Paso Elec. Co.*, 127 NM 729, 987 P2d 386 [1999]; *Hibbits v Sides*, 34 P3d 327 [Alaska 2001]). Other states have folded spoliation claims into their ordinary negligence rubric, requiring plaintiffs to meet typical proximate cause and actual damages standards (*see e.g. Gilleski v Community Med. Ctr.*, 336 NJ Super 646, 765 A2d 1103 [App Div 2001]; *Boyd v Travelers Ins. Co.*, 166 Ill 2d 188, 652 NE2d 267 [1995]). Plaintiffs' claim here would fail under the standards adopted by these courts as there is no indication that the City acted with malice or an intent to prevent them from obtaining recovery for their burn injuries, nor was the City's destruction of the car a proximate cause of those injuries.

Thus, plaintiffs primarily urge this Court to recognize the tort by emulating the rationale set forth in three cases: *Hannah v Heeter* (213 W Va 704, 584 SE2d 560 [2003]), *Oliver v Stimson Lbr. Co.* (297 Mont 336, 993 P2d 11 [1999]), and *Holmes v Amerex Rent-A-Car* (710 A2d 846 [DC App 1998]). These courts have endorsed the tort of third-party negligent spoliation of evidence on the theory that, for every wrong there should be a remedy, and have reasoned that traditional responses to spoliation—such as the imposition of discovery sanctions available only against parties—are inadequate in certain situations. In particular, plaintiffs ask us to adopt the elements of a negligent spoliation claim articulated by the West Virginia Supreme Court of Appeals, requiring a spoliation plaintiff to prove:

> "(1) the existence of a pending or potential civil action; (2) the alleged spoliator had actual knowledge of the pending or potential civil action; (3) a duty to preserve evidence arising from a contract, agreement, statute, administrative rule, voluntary as-

sumption of duty, or other special circumstances; (4) spoliation of the evidence; (5) the spoliated evidence was vital to a party's ability to prevail in a pending or potential civil action; and (6) damages" (*Hannah*, 213 W Va at 713-714, 584 SE2d at 569-570).

Plaintiffs further request that we echo West Virginia's view that, "[o]nce the first five elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation" (213 W Va at 714, 584 SE2d at 570). Finally, acknowledging that Montana and the District of Columbia require discounting of damages in spoliation cases,[3] plaintiffs ask that we follow West Virginia's approach in compelling the spoliator to fully compensate the plaintiff for any damages plaintiff would have received if the civil action thwarted by the destruction of evidence had been successfully prosecuted. Under this analysis, the spoliator must compensate the plaintiff for any damages caused by the underlying tortfeasor, regardless of the nature or severity of the spoliator's misconduct.

In New York, while the desire to provide an avenue to redress wrongs is certainly an important consideration underlying our tort jurisprudence, the recognition that there has been an interference with an interest worthy of protection has been the beginning, not the end, of our analysis. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world" (*Trombetta v Conkling*, 82 NY2d 549, 554 [1993], quoting *Tobin v Grossman*, 24 NY2d 609, 619 [1969]).

> "Tort liability . . . depends on balancing competing interests: the question remains who is legally bound to protect plaintiffs' right at the risk of liability. . . . To identify an interest deserving protection does not suffice to collect damages from anyone who causes injury to that interest . . . Not every deplorable act . . . is redressable in damages" (*Madden v Creative Servs.*, 84 NY2d 738, 746 [1995] [citation, internal quotation marks and brackets omitted]).

---

**3.** In these jurisdictions, the trier of fact calculates the damages the plaintiff would have been awarded had it won the impaired lawsuit and then determines, in percentage form, the likelihood that the plaintiff would have prevailed in that litigation. If, for example, the jury finds that the plaintiff would have had a 50% chance of success, damages are discounted by 50% (*see Holmes*, 710 A2d at 853-854; *Oliver*, 297 Mont at 351-352, 993 P2d at 21).

New York courts therefore also weigh other judicial and social policy concerns in determining whether to recognize new tort causes of action (*see Hall v United Parcel Serv. of Am.*, 76 NY2d 27 [1990]).

In this case, there can be no doubt that the City's violation of the preservation order interfered with an interest worthy of protection. The integrity of our judicial system depends on the ability of litigants to locate and identify relevant proof without fear that the truth-seeking process will be thwarted by spoliation of evidence. Destruction of evidence by parties with a duty of preservation simply cannot be condoned, especially when that duty is imposed by court order.

But we are not convinced that existing New York remedies are inadequate to deter spoliation or appropriately compensate its victims. Based on a review of cases across the nation, it appears that destruction of evidence by an entity without ties to the underlying litigation is not a frequent occurrence. As the California Supreme Court concluded when it ended its state's 15-year experiment with the tort: "If existing remedies appear limited, that may well be because third party spoliation has not appeared to be a significant problem in our courts" (*Temple Community Hosp. v Superior Ct.*, 20 Cal 4th 464, 477, 976 P2d 223, 232 [1999]).

Indeed, in many of the instances where other jurisdictions have recognized an independent tort, a New York court could have provided a remedy to the spoliation victim through our traditional litigation sanctions. For example, in *Holmes* (710 A2d 846 [1998]), the spoliator was the car rental company that had rented a car to the plaintiff injured in an accident. Plaintiff initially brought a personal injury claim against the company, alleging improper maintenance of the vehicle. But after the company destroyed the vehicle, plaintiff abandoned his negligent maintenance claim in favor of a spoliation claim. In that situation, it would not be necessary in New York to use an independent tort to afford plaintiff a remedy for the destruction of evidence. Rather, plaintiff could have continued to pursue his personal injury claim against the company, which could have been appropriately sanctioned for destruction of evidence within the context of that action.

Similarly, in *Hannah* (213 W Va 704, 584 SE2d 560 [2003]), plaintiff brought a sexual harassment claim against a prospective employer, relying on an audiotape of a conversation with the defendant as her primary evidence. When defendant sought

to inspect the original tape, it was discovered that plaintiff had left the tape with her ex-husband, who passed it along to plaintiff's mother who, in turn, destroyed it. Although the West Virginia Supreme Court of Appeals viewed this as a third-party spoliation claim, plaintiff could have been held accountable for failing to safeguard the original tape, providing a sanction against her in the underlying sexual harassment case (*see e.g. Amaris,* 304 AD2d 457 [2003]). One option available in New York would have been to preclude plaintiff from using her copy of the tape since the original was no longer available, leaving both parties in the same position most litigants are in—having to prove their case through testimony. Recognition of an independent spoliation tort was not necessary to afford the victim of spoliation—there a defendant—a meaningful remedy.

As the present case demonstrates, there will be unfortunate instances when third parties with a duty to preserve evidence but no connection to the underlying lawsuit will negligently breach that duty, presenting a situation where discovery sanctions are inadequate to address the spoliation victim's loss. But even in this case, plaintiffs were not left without recourse. Under our civil contempt statutory scheme, a party who suffers a loss or injury as a result of violation of a court order can seek full compensation from the contemnor (*see* Judiciary Law § 773; *State of New York v Unique Ideas,* 44 NY2d 345 [1978]). The City conceded at oral argument that, had plaintiffs pursued their contempt claim, they would—at the very least—have been entitled to monetary damages in an amount necessary to reimburse them for additional investigation, research or expert expenses incurred in attempting to prove the underlying negligence claim absent inspection of the vehicle.

Plaintiffs consider the contempt remedy deficient because they seek to recover not only the damages flowing from the City's destruction of the vehicle but also compensation for their pain and suffering, emotional distress and other damages related to the fire, which they concede was not caused by the City. At bottom, plaintiffs seek recognition of a new cause of action because they cannot meet the traditional proximate cause and actual damages standards at the foundation of our common-law tort jurisprudence. This highlights one of the primary arguments against adoption of the spoliation tort. As the Massachusetts Supreme Judicial Court recently explained:

"we are persuaded that allowing a separate cause of

action for spoliation would recognize a claim that, by definition, could not be proved without resort to multiple levels of speculation . . . A plaintiff pursuing a spoliation action would have to prove that the breach of the duty to preserve evidence caused damage to the plaintiff's position in the underlying case, and would have to prove the amount of those damages. To establish causation and damages, the plaintiff would have to show that the jury in the underlying action would have found differently if the original, unaltered item of evidence had been before them. Such a showing requires proof of the very thing that can no longer be proved: the precise nature of the original item. If the contents or salient characteristics of the original item can still be shown, then they can be shown in the underlying action and there is no damage from any 'spoliation.' If they cannot be shown, then the jury in the spoliation action could only surmise whether the item in its original state would in fact have been favorable to the party now claiming to have suffered a loss on account of that spoliation. And it would be the utmost of surmise and speculation for the jury to decide what persuasive effect that item, if still available in its original state, would have had on the jury in the underlying action" (*Fletcher v Dorchester Mut. Ins. Co.*, 437 Mass 544, 551-552, 773 NE2d 420, 426-427 [2002] [citations omitted]).

In a third-party spoliation case, because the content of the lost evidence is unknown, there is no way of ascertaining to what extent the proof would have benefitted either the plaintiff or defendant in the underlying lawsuit and it is therefore impossible to identify which party, if any, was actually harmed. This led the California Supreme Court to limit the availability of the tort, in part, because "[t]he elements of causation and damages . . . would be nearly impossible to prove, and permitting a cause of action that necessarily would be based upon speculation and conjecture could burden the courts with claims that may be peculiarly productive of arbitrary and unreliable verdicts" (*Temple Community Hosp.*, 20 Cal 4th at 470, 976 P2d at 228). As a general rule, New York courts have been reluctant to embrace claims that rely on hypothetical theories or speculative assumptions about the nature of the harm incurred or the extent of plaintiff's damages (*see e.g. Becker v Schwartz*, 46 NY2d 401, 411-412 [1978]).

The same concerns about speculation are evident in this case. Plaintiffs contend that examination of the vehicle would have revealed either a design or manufacturing defect, improper maintenance or faulty repair services. But it is also possible that the fire caused so much damage to the van that an inspection would fail to disclose a conclusive cause. Or an inspection could have resulted in conflicting expert opinions with differing views on causation, rendering plaintiffs' success in a lawsuit dependent on which party's expert the jury found most credible. Finally, inspection of the vehicle might not have disclosed any maintenance issues, manufacturing deficiencies or design defects, thereby failing to supply a basis to hold any of those defendants liable. These are among the possibilities that the finder of fact would have to ponder were we to recognize the spoliation of evidence cause of action, with no meaningful way for the jury to reliably resolve whether the destruction of evidence was, in fact, the cause of plaintiffs' failure to obtain damages for their burn injuries from the original tortfeasors.

Plaintiffs' claims further present uncertainties with respect to recovery of damages. Plaintiffs assume that, had the van not been destroyed, they would have been able to obtain a judgment in the full amount of damages from a responsible defendant with adequate funds or insurance coverage. But even if plaintiffs prevailed in the underlying lawsuit, this outcome would not be assured. Had more than one defendant been joined in the action and multiple causes assigned to the accident, liability might have been apportioned among the tortfeasors without any one defendant bearing responsibility for the total judgment. If plaintiffs obtained a judgment against the original tortfeasor or tortfeasors, there is no guarantee they would have collected damages in full. The complexities inherent in any multiple party negligence action would be compounded in a spoliation claim since litigation emphasizing the impact of destruction of evidence would afford the jury no reasonable means of determining how liability might have been apportioned among tortfeasors in the original litigation or of assessing plaintiff's own comparative fault, if any.

The facts here reveal yet another public policy factor weighing against the new claim. Recognition of the tort has the potential to create significant liability for municipalities in New York since these entities perform a myriad of functions—including towing and warehousing vehicles involved in accidents—which could give rise to spoliation claims. We are not persuaded

that it would be sound public policy to create a new tort that shifts liability from responsible tortfeasors to government entities that serve as repositories of evidence that may or may not be relevant in future civil cases. Municipalities might prove unduly attractive defendants, diverting the focus of litigation away from the tortfeasors who actually caused the injury and resultant damages.

For all of these reasons, we join the majority of jurisdictions to consider the issue (*see Fletcher*, 437 Mass at 547, 773 NE2d at 424) and decline to recognize spoliation of evidence as an independent tort claim.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.