OPINION OF THE COURT
Ann T. Pfau, J.
Plaintiff moved to strike the answer of defendant Enzo Clinical Laboratory, sued herein as Enzo Clinical Labs, Inc., pursuant to CPLR 3126 for failure to produce discovery, and for summary judgment as to liability in the event the answer is struck. The motion is denied as follows.
This medical malpractice and wrongful death lawsuit arises from the treatment of plaintiff’s decedent, Tyesha Johnson, who died on June 4, 2009, along with her unborn child. Ms. Johnson was pregnant at the time of her death and suffered from a condition known as hyperemesis gravidarum, a complication of pregnancy. At her physician’s request, a blood sample was taken from Ms. Johnson. The sample was sent to Enzo Laboratory for testing. In part, plaintiff alleges that Enzo Laboratory failed to timely provide Ms. Johnson’s treating physicians with the results of the blood serum test that would have indicated that she had a dangerously low level of potassium in her blood (a condition referred to as hypokalemia), and that this failure was a factor in causing her premature death.
Enzo Laboratory produced a lab technician named Girishk Patel for deposition. Patel described the analyzation process used by Enzo Laboratory (tr of Patel EBT, surreply off of Heather Laschewer, Esq., exhibit E). He testified that serum samples were placed in a rack, which is then placed inside a machine that continuously analyzes the samples that are loaded into it. The machine, which he also referred to as an instru *758 ment, is known as the Olympus 5400. The samples are in tubes labeled with a bar code identifying the patient and the test desired. The machine can read the bar code and perform different tests for different samples. After the machine analyzes a sample, it prints out a report displaying the results. It also transmits the report to a “host computer,” where it is printed out for delivery to the doctors. Patel testified that a copy of the report printed out at his workstation was kept on file. When the machine detects an abnormal reading, such as a low potassium level, the reading is indicated on the printout with an asterisk. The machine sends the results to a computer workstation nearby, where the operator can review the result and either release the data to the “host” computer, or repeat the test to verify the result. The test would be repeated, and the data automatically released to the “host” computer.
An abnormal reading that is above or below certain guidelines is considered “critical,” and Enzo Laboratory policies mandate that the ordering physician be contacted as soon as possible (Laschewer surreply off, exhibit F). A potassium level below 2.5 meq/1 is critical (id.; see Patel EBT at 103-105). If the physician orders the test on a “STAT” basis, Enzo Laboratory completes the test within four hours of receipt (off of Jose Reyes, annexed to Laschewer surreply off, exhibit G 1! 5). If the test is not ordered on a “STAT” basis, the test is completed within 24 hours of receipt (id. II 6). If the test returns a critical value, it is tested again, and will be reported to the physician if the second test results in data within a 5% range of the original test; if the data is outside the 5% range, the physician is contacted so an additional sample can be obtained from the patient (id. 1ÍH 10-11).
For the purposes of this motion, these facts regarding Ms. Johnson’s treatment and the analysis of her blood serum are not disputed. She presented to the office of her OB/GYN, defendant Dr. Markoff, on June 3, 2009. According to a report generated by Enzo Laboratory (Laschewer surreply off, exhibit C), at approximately 4:30 p.m. a blood sample was taken from Ms. Johnson by Dr. Markoffs office and sent to Enzo Laboratory for testing. The sample was received and input into Enzo Laboratory’s computer system at 11:29 p.m. on June 3. At 8:06 a.m. on June 4, 2009, the results of the test and 2.5 meq/1 of potassium was reported to the “host” computer, after the sample had been tested and the result was verified with a retest. (Plaintiff argues that the sample may have been tested anytime between 11:29 *759 p.m. on June 3 and 8:06 a.m. on June 4, as the latter time indicates only when the test result was sent to the “host” computer after verification, not the time that the initial test was actually performed.) Enzo Laboratory’s records show that the test result was faxed to Dr. Markoff’s office at 10:04 a.m., and a verbal report was made to Dr. Markoff’s office at 11:39 a.m. (Reyes off 11 8). Plaintiff argues that the results were reported too late to be of use in saving decedent’s life.
This lawsuit was commenced on June 18, 2010. Plaintiff served a notice to produce on Enzo Laboratory in January 2011. Immediately following Patel’s deposition on October 10, 2012, plaintiff served a demand for a copy of the workstation report (notice to produce, off of Anthony T. DiPietro, Esq., exhibit A). Enzo Laboratory responded to the demand on February 21, 2013 (Laschewer surreply off, exhibit F). Its response states that it was no longer in possession of the workstation report (Laschewer off in opposition, exhibit C). Plaintiff then filed the instant motion.
Plaintiff contends that the workstation report is significant because the potassium level reported to Dr. Markoffs office was exactly 2.5 meq/1. Since the report provided to Dr. Markoff states that the result was “verified by repeat analysis” (Laschewer surreply off, exhibit C), plaintiff wants to know if any of the tests showed a 2.4 meq/1 result. Plaintiff argues that if an unverified test showed potassium levels of 2.4 meq/1, that would have obligated Enzo Laboratory to immediately contact Dr. Markoffs office, rather than report it approximately two hours later as the records indicate.
At oral argument, counsel were given the opportunity to file surreplies limited to the issue of spoliation. Plaintiff argues that Enzo Laboratory was obligated to preserve the workstation report for a minimum of seven years pursuant to New York State Department of Health regulations governing clinical laboratories (10 NYCRR 58-1.11), and that its failure to do so in this case warrants spoliation sanctions.
Discussion
If a court finds that a party destroyed evidence that ought to have been disclosed, the court may make such orders with regard to the failure or refusal as are just, including striking out pleadings (CPLR 3126). The nature and degree of penalty to be imposed for failing to disclose is within the discretion of the court (Fellin v Sahgal, 268 AD2d 456 [2d Dept 2000]). “The ‘drastic remedy’ of striking an answer pursuant to CPLR 3126 *760 is warranted when there is ‘a clear showing’ that the failure to comply with discovery demands was willful and contumacious” (Denoyelles v Gallagher, 40 AD3d 1027, 1027 [2d Dept 2007] [citation omitted]).
“A party seeking sanctions based on the spoliation of evidence must demonstrate: (1) that the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a ‘culpable state of mind’; and finally, (3) that the destroyed evidence was relevant to the party’s claim or defense such that the trier of fact could find that the evidence would support that claim or defense” (VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d 33, 45 [1st Dept 2012]).
For the purposes of considering a spoliation sanction, a “culpable state of mind” includes negligence (id.; see Zubulake v UBS Warburg LLC, 220 FRD 212, 220 [SD NY 2003]). “The determination of spoliation sanctions is within the broad discretion of the court” (Dennis v City of New York, 18 AD3d 599, 600 [2d Dept 2005]). Apart from striking the spoliator’s pleading, the court may also preclude proof favorable to the spoliator to restore balance to the litigation, require the spoliator to pay costs to the injured party associated with the development of replacement evidence, or employ an adverse inference instruction at the trial of the action (Ortega v City of New York, 9 NY3d 69, 77 [2007]).
Enzo Laboratory contends that under regulations of the New York Department of Health, it was not obligated to retain the workstation report for more than one year from its creation. The relevant regulation provides as follows:
“(c) All records and reports of tests performed including the original or duplicates of original reports received from another laboratory shall be kept on the premises of both laboratories and shall be exhibited to representatives of the department on request. Records listed below shall be retained by the laboratory for at least the period specified
“(5) The following types of laboratory reports shall be retained for at least the period specified:
“(i) tissue pathology including exfoliative cytology — 20 years;
“(ii) syphilis serology — negative report — two years;
*761 “(in) cytogenetics — 25 years; and “(iv) all others — 7 years.
“(6) Worksheets containing instrument readings and/or personal observations upon which the outcome is based shall be retained for one year.” (10 NYCRR 58-1.11.)
Plaintiff contends that this regulation required Enzo Laboratory to retain the workstation report for seven years under subdivision (c) (5) (iv), because it is a laboratory report that does not fit into some other category in subdivision (c) (5) (i)-(iii). Enzo Laboratory argues that the workstation report is akin to a “worksheet[ ] containing instrument readings . . . upon which the outcome is based,” so it falls under the category of documents that need to be retained for only one year under subdivision (c) (6).
There is no indication that Enzo Laboratory had preserved the workstation report and destroyed it in response to this lawsuit or plaintiffs demand that it be produced, or otherwise acted wilfully to dispose of the report. The only “culpable state of mind” plaintiff can attribute to Enzo Laboratory is negligence in failing to preserve the report under the standard of care dictated by the Department of Health regulation. If defendant’s interpretation of the regulation is correct, then plaintiffs motion must be denied.
Section 58-1.11 (c) (5) (iv) provides that “all others,” meaning all other laboratory reports, must be retained for seven years. Section 58-1.11 (c) (6) provides that “[worksheets containing instrument readings and/or personal observations upon which the outcome is based shall be retained for one year,” which the court interprets as meaning documents that contain data or observations from which a final report is generated must be retained for one year.
The United States Supreme Court has held that “[w]hen interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and give to it such a construction as will carry into execution the will of the Legislature.” (Kokoszka v Belford, 417 US 642, 650 [1974] [internal quotation marks omitted].) This reasoning applies to the interpretation of a regulation as well (see Matter of ATM One v Landaverde, 2 NY3d 472 [2004]). With respect to section 58-1.11, the regulation draws a distinction between a report and documentation of the data that is generated in preparation of *762 the report. The workstation report in question is clearly the latter. A copy of the final report was produced to plaintiff. In demanding the workstation report, plaintiff seeks contemporaneous documentation created by the Olympus 5400 instrument in the process of arriving at a final report. Accordingly, the workstation report is a “worksheet ] containing instrument readings,” and Enzo Laboratory had a duty to retain it for one year, pursuant to section 58-1.11 (c) (6), and not for seven years as provided in section 58-1.11 (c) (5) (iv).
The summons and complaint in this action were served upon Enzo Laboratory more than one year after the workstation report was created. Since there is no indication that Enzo Laboratory possessed a copy of the workstation report at the time the summons and complaint or demands for discovery were served, the court does not reach the question of whether defendant breached its obligation to preserve the document under a litigation hold (VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d at 41).
It hereby is ordered that plaintiff’s motion to strike Enzo Laboratory’s answer and for summary judgment is denied.