# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

380

CA 15-01490

PRESENT: CENTRA, J.P., CARNI, DEJOSEPH, CURRAN, AND SCUDDER, JJ.

---

STEPHEN SARACH, PLAINTIFF-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

M&T BANK CORPORATION, DEFENDANT-APPELLANT.

---

LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (DIANE M. PERRI ROBERTS OF COUNSEL), FOR DEFENDANT-APPELLANT.

PAUL WILLIAM BELTZ, P.C., BUFFALO (WILLIAM QUINLAN OF COUNSEL), FOR PLAINTIFF-RESPONDENT.

-----------------------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Erie County (Catherine R. Nugent Panepinto, J.), entered May 28, 2015. The order granted plaintiff's motion to strike defendant's answer and affirmative defenses.

It is hereby ORDERED that the order so appealed from is modified on the law by vacating the sanctions imposed and reinstating the answer and affirmative defenses, and plaintiff is granted an adverse inference charge as a sanction under CPLR 3126, and as modified the order is affirmed without costs in accordance with the following memorandum: Plaintiff commenced this action on March 1, 2012, for injuries he allegedly sustained when he slipped and fell on ice on March 23, 2009, as he was walking into defendant's bank in Buffalo, New York. On August 10, 2010, prior to the commencement of the action, plaintiff sought an order pursuant to CPLR 3102 (c) for pre-action disclosure and preservation of evidence. Defendant opposed plaintiff's request for any pre-action disclosure, but represented to Supreme Court that it had voluntarily undertaken preservation of certain evidence, including accident reports, photographs, and surveillance videotapes, and ultimately "consent[ed] to an order of preservation." On October 29, 2010, the court granted plaintiff's application and ordered defendant to preserve, inter alia, all "photographs [and] video tapes, including but not limited to security and surveillance video related to the subject accident." During discovery after the action was commenced, plaintiff requested, inter alia, surveillance films related to the subject accident, and defendant responded that those materials had not been preserved. Thereafter, on July 30, 2014, plaintiff brought a motion pursuant to CPLR 3126 to strike defendant's answer on the ground that defendant had violated the court's 2010 order of preservation. The court granted plaintiff's motion and struck defendant's answer and affirmative defenses. Defendant appeals.

Initially, we agree with plaintiff that a sanction was warranted inasmuch as defendant "wilfully fail[ed] to disclose information" that the court had ordered to be preserved (CPLR 3126). Nevertheless, we conclude that the court abused its discretion in striking defendant's answer and affirmative defenses. It is well established that "a less drastic sanction than dismissal of the responsible party's pleading may be imposed where[, as here,] the loss does not deprive the nonresponsible party of the means of establishing his or her claim or defense" (*Marro v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 294 AD2d 341, 342). Indeed, we note that the record does not demonstrate that the plaintiff has been " 'prejudicially bereft' " of the means of prosecuting his action (*Rodman v Ardsley Radiology, P.C.*, 80 AD3d 598, 599). Thus, we conclude that an appropriate sanction is that an adverse inference charge be given at trial with respect to the unavailable surveillance footage (*see Mahiques v County of Niagara*, 137 AD3d 1649, 1653; *Jennings v Orange Regional Med. Ctr.*, 102 AD3d 654, 656; *Gogos v Modell's Sporting Goods, Inc.*, 87 AD3d 248, 254-255), and we therefore modify the order accordingly.

Our dissenting colleague agrees that a "remedy is necessary," but disagrees with the sanction we have imposed, our analysis in reaching that sanction, and ultimately our directive to the court on how to effectuate the sanction. In our view, our resolution of this case requires us simply to determine whether defendant violated an order and whether such violation requires a sanction pursuant to CPLR 3126. The dissent refers to the "minimal prejudice suffered by plaintiff in not having been able to inspect the surveillance video in question." That reference overlooks the undisputed fact that plaintiff sought an order pursuant to CPLR 3102 (c) for pre-action disclosure, and counsel for defendant not only volunteered to preserve certain items, including surveillance video related to the subject accident, but "consent[ed] to an order of preservation." Naturally, the court then granted the relief requested by plaintiff, and defendant never challenged the resulting order. Under those circumstances, we are unable to conclude that defendant's failure to comply with the order was anything but wilful. As for our dissenting colleague's concern with respect to the form of the adverse inference charge, we anticipate that the court will follow the Pattern Jury Instructions.

All concur except CURRAN, J., who dissents and votes to modify in accordance with the following memorandum: I respectfully dissent from the majority's conclusion that "defendant 'wilfully fail[ed] to disclose information' that the court had ordered to be preserved (CPLR 3126)." I also disagree with the sanction imposed. Nevertheless, I agree that a remedy is necessary to cure the minimal prejudice suffered by plaintiff in not having been able to inspect the surveillance video in question. For the reasons set forth below, I would modify Supreme Court's order, vacate the sanction imposed, reinstate the answer, and preclude defendant from introducing evidence at trial in its direct case regarding the contents of the surveillance video. I also would remit for a hearing pursuant to Part 130 of the Rules of the Chief Administrator of the Courts (*see* 22 NYCRR 130 *et seq.*) to determine whether defendant's counsel engaged in "[f]rivolous conduct" (22 NYCRR § 130-1.1 [c]) warranting an award of costs or

sanctions based on his affidavit stating that defendant had "already voluntarily taken steps to preserve (the surveillance video) without any loss of evidence."

Plaintiff alleges that he slipped and fell on ice on March 23, 2009, as he was walking into defendant's main branch in downtown Buffalo, New York. Plaintiff asserts that the ice was created by defendant because it was negligently operating its outside fountain in freezing temperatures, and plaintiff slipped on an ice patch next to the fountain.

As noted by the majority, on October 29, 2010, the court granted plaintiff's application to preserve, inter alia, "video tapes" and "security and surveillance video related to the subject accident" (hereafter, preservation order). It was in response to this application that defendant's counsel made the representation assuring that evidence had been voluntarily preserved.

The action was commenced on March 1, 2012, and document discovery began in 2012 and 2013. On June 4, 2014, defendant's counsel sent a letter to plaintiff's counsel indicating that the only surveillance videos and photographs that had been kept pursuant to defendant's normal retention policies were two photographs taken by the security officer on the date of the accident, a still photograph from the surveillance video on the date of the accident, and four still photographs from the surveillance video on March 27, 2009, when plaintiff returned to the bank seeking reimbursement for his medical expenses. Defendant indicated that its normal policy is to overwrite the surveillance video tapes after 90 days. Thus, defendant claims that, within 90 days after the accident, the surveillance videos were overwritten and reused.

Plaintiff brought the subject motion to strike defendant's answer on July 30, 2014, based solely on the violation of the preservation order. In opposition to the motion, defendant provided an affidavit from an assistant vice-president whose duties include inspection of records maintained by defendant relating to bodily injury claims and litigation. The assistant vice-president averred that she conducted a diligent search of defendant's records and confirmed that all of the videos and photographs in the possession of defendant at the time of the preservation order had been produced for plaintiff. Additionally, she averred that the surveillance video from the date of the accident was overwritten pursuant to defendant's normal business practice approximately 14 months before the preservation order was issued. Plaintiff did not contest any of these sworn statements from the assistant vice-president.

The majority's conclusion that defendant "wilfully" failed to disclose the surveillance video was not even argued in plaintiff's spoliation motion. Rather, the motion was premised on the other basis for a penalty under CPLR 3126, i.e., the violation of a court order. Irrespective of whether the majority's sanction is based on a "willful failure to disclose" or contumacious behavior in violating a court order, the imposition of a penalty pursuant to CPLR 3126 is unfounded

here because defendant, pursuant to its normal business policy, recorded over the surveillance video more than a year before the preservation order was entered.

I respectfully submit that the majority has overlooked our precedent applying CPLR 3126.  The prerequisites for a penalty pursuant to that statute are a party:  (1) refusing to "obey an order for disclosure"; or (2) "wilfully fail[ing] to disclose information" (CPLR 3126).  When faced with a motion alleging "willful, contumacious or bad faith conduct," our Court analyzes it according to a burden-shifting structure:  the movant must establish that such conduct occurred, "thereby shifting the burden to [the adversary] to offer a reasonable excuse" (*Allen v Wal-Mart Stores, Inc.*, 121 AD3d 1512, 1513; *see Cason v Smith*, 120 AD3d 1554, 1555, *lv dismissed* 25 NY3d 1057; *Hann v Black*, 96 AD3d 1503, 1504-1505; *Household Fin. Realty Corp. of N.Y. v Robinson*, 68 AD3d 1724, 1724; *Hill v Oberoi*, 13 AD3d 1095, 1096).  When the movant seeks to strike the adversary's pleading, as occurred here, our Court requires that there be a "clear showing" (*Fox v Eastman Kodak Co.*, 275 AD2d 921, 921) of willful, contumacious, or bad faith conduct, or that such conduct be "conclusively shown" (*McFadden v Oneida, Ltd.*, 93 AD3d 1309, 1311).

The majority has overlooked our precedent here in two ways. First, it has not considered whether defendant's purported willful failure to disclose information that the court ordered be preserved, i.e., contumacious behavior, was "conclusively shown" or established by a "clear showing," or by "clear and convincing evidence," as would be necessary for contempt (*El-Dehdan v El-Dehdan*, 26 NY3d 19, 29), or to exercise the court's inherent power to preserve the integrity of the judicial system (*see CDR Créances S.A.S. v Cohen*, 23 NY3d 307, 318).  Second, the majority has failed to mention the excuse offered by defendant, i.e., that the surveillance video from the date of the accident was overwritten pursuant to normal business practices within 90 days after plaintiff's alleged fall and that defendant was therefore unable to comply with the preservation order or plaintiff's demand to produce.

Our Court has excused the alleged spoliation of evidence when the evidence was destroyed "in good faith before litigation was pending, pursuant to . . . normal business practices" (*Raymond v State of New York*, 294 AD2d 854, 855; *see Conderman v Rochester Gas & Elec. Corp.*, 262 AD2d 1068, 1070).  Additionally, "a party cannot be compelled to disclose that which is not in his or her possession" (*Saferstein v Stark*, 171 AD2d 856, 857).  Our Court also has accepted that an "inability to comply" with a court order may be a "valid defense" to an application for contempt (*Matter of Andrew B.*, 128 AD3d 1513, 1515).

The majority is rightfully concerned about the perceived misrepresentation in the affidavit from defendant's counsel seeming to ensure that the surveillance video had been preserved.  However, I respectfully submit that these concerns should not cause us to overlook our precedent and the fundamental facts, which should compel us to conclude here that the evidence was destroyed pursuant to normal

business practices and that the evidence was not contumaciously or wilfully destroyed.  Thus, a penalty under CPLR 3126 is not warranted.

More fundamentally, the majority fails to address the three-prong analysis for spoliation motions adopted by the Court of Appeals in *Pegasus Aviation I, Inc. v Varig Logistica S.A.* (26 NY3d 543, 547).  The first prong is whether "the party having control over the evidence possessed an obligation to preserve it *at the time of its destruction*" (*id.*) (emphasis added).  The majority's analysis is devoid of this required finding.  Instead, the majority apparently assumes that the surveillance video still existed as of the time the preservation order was obtained and after litigation commenced.  The record, however, offers no support for this assumption and is quite clearly to the contrary.  Rather, the record demonstrates that the surveillance video was overwritten within 90 days of plaintiff's fall, and plaintiff has not disputed this fact.

While I disagree with the majority's analysis under CPLR 3126, and fault the majority for not adhering to *Pegasus*, I nevertheless conclude that defendant had a duty to preserve the surveillance video within 90 days of plaintiff's fall.  In my view, defendant was on "notice of an impending lawsuit" at the time the surveillance video was overwritten (*MetLife Auto & Home v Joe Basil Chevrolet*, 1 NY3d 478, 484).  Moreover, the video is "matter material and necessary in the prosecution or defense of an action" (CPLR 3101 [a]).  Although defendant indicates that the surveillance video from the date of the accident was inspected and that it did not show plaintiff's fall, plaintiff should not be required to accept that representation without an opportunity to inspect the video (*see Gogos v Modell's Sporting Goods, Inc.*, 87 AD3d 248, 251).  Thus, I agree with the majority that a remedy for the missing evidence is appropriate.  However, for the reasons discussed below, an adverse inference charge should not be given when, as here, the sole basis for the imposition of a penalty is negligent conduct.  Instead, in my view, the more appropriate remedy is "to restore balance to the litigation" by precluding defendant from introducing at trial evidence of the video's content as part of its direct case (*Ortega v City of New York*, 9 NY3d 69, 76).

While the Court of Appeals has indicated that an adverse inference charge, among other remedies, may be an appropriate sanction or penalty for spoliation (*see Pegasus*, 26 NY3d at 554; *Ortega*, 9 NY3d at 76), it has not held that all such remedies are suited to all forms of spoliation, i.e., negligent, grossly negligent, and willful.  Upon a finding that the destruction of evidence was solely the result of negligence—such as through normal business practices—thereby fulfilling the second prong of the *Pegasus* analysis, i.e., a " 'culpable state of mind' " (26 NY3d at 547), I submit that an adverse inference charge is inappropriate because it would be inconsistent with its traditional use as an evidentiary inference that the missing evidence was unfavorable to the spoliator or that destruction of the evidence showed consciousness of a weak case.

New York law has long recognized that "[a] party's failure to produce evidence[,] which the party controls and would be naturally

expected to introduce, raises the logical inference that the withheld evidence would prove unfavorable. *Armory v Delamirie*, 1 Strange (KB) 505, 93 Eng Rep 644 (non-production of a chattel)" (Jerome Prince, Richardson on Evidence § 3-139 [Farrell 11th ed 1995]).  Further, "[t]he intentional destruction or mutilation of relevant evidence may give rise to the inference that the matter destroyed and mutilated is unfavorable to the spoliator . . . The mutilation or destruction is not alone sufficient to serve as a basis for this inference; the act must have been intentional, and the matter mutilated or destroyed must be shown to be relevant to the issues on the trial . . . Fabrication or deliberate mutilation of evidence or other fraud on the part of a party is a circumstance that may properly be considered by the jury as indicating a weak case" (*id.* § 3-141).

When evidence has been negligently destroyed, there is no factual basis upon which to instruct the jury to infer weakness of the spoliator's case or that the evidence was unfavorable.  The federal courts recently grappled with this issue in connection with "electronically stored information" (ESI) and, with respect to ESI, they have rejected an adverse inference charge premised on negligent conduct (*see* Federal Rules of Civil Procedure, rule 37 [e] [2]; *see also* Federal Rules of Civil Procedure, Advisory Committee Notes, 2015 Amendment, Subdivision [e] [2] ["Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence.  Negligent or even grossly negligent behavior does not logically support that inference.  Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.  The better rule for the negligent or grossly negligent loss of electronically stored information is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction"]).

In reaching this conclusion, the federal courts resolved a dispute among the Circuit Courts of Appeal electing to adopt the reasoning of courts rejecting negligence as a basis for an adverse inference charge (*see e.g. Aramburu v The Boeing Company*, 112 F3d 1398, 1407; *Vick v Texas Empl. Commn.*, 514 F2d 734, 737), and to reject the reasoning of those courts accepting it (*see e.g. Residential Funding Corp. v DeGeorge Fin. Corp.*, 306 F3d 99, 108). This rejection of *Residential Funding* may have significant ramifications for New York law because that case, as followed in *Zubulake v UBS Warburg LLC* (220 FRD 212, 220), is the basis for our appellate courts accepting negligence as a form of a " 'culpable state of mind' " authorizing spoliation sanctions (*Pegasus*, 26 NY3d at 547; *see VOOM HD Holdings LLC v EchoStar Satellite L.L.C.*, 93 AD3d 33, 45; *Ahroner v Israel Discount Bank of N.Y.*, 79 AD3d 481, 482). Nevertheless, *Pegasus* is controlling on this issue, and mere negligence is apparently a culpable state of mind in New York for the purpose of imposing spoliation sanctions.

One of the reasons the federal courts limited the availability of an adverse inference charge in the recent amendments to the Federal Rules of Civil Procedure, rule 37 (e), was to address business concerns about over-preservation of ESI (see Alexander Nourse Gross, Note, *A Safe Harbor from Spoliation Sanctions:  Can an Amended Federal Rule of Civil Procedure 37 (E) Protect Producing Parties?*, 2015 Colum Bus L Rev 705, 723-724, 754, 763).  The majority's failure to appreciate such concerns, not only in this case, but also in our precedent seemingly employing an adverse inference charge as the compromise remedy of choice (see *Mahiques v County of Niagara*, 137 AD3d 1649, 1653; *Koehler v Midtown Athletic Club, LLP*, 55 AD3d 1444, 1445; *Tomasello v 64 Franklin, Inc.*, 45 AD3d 1287, 1288; *Enstrom v Garden Place Hotel*, 27 AD3d 1084, 1087), is another reason for my dissent.

Additionally, even though the majority sua sponte imposes an adverse inference charge as a sanction without a request by either party, it blithely leaves it to the trial court to figure out what the required charge should say and how it will impact the proof at trial. The majority elects not to refer to either PJI 1:77 or PJI 1:77.1 (1A NY PJI 1:77 at 130; 1A NY PJI 1:77.1, at 132-133 [2016]), or to some other charge it considers to be more "tailored" to the facts here (*Pegasus*, 26 NY3d at 554).  However, even a casual citation to PJI 1:77 or PJI 1:77.1, without more, would be insufficient.  PJI 1:77 is a "failure to produce" charge and leaves it to the jury to determine whether:  (1) the evidence existed; (2) there was a reasonable explanation for it not being produced in court; and (3) the evidence would have been important or significant to the jury in its deliberations.  PJI 1:77 is the traditional evidentiary inference permitting the jury to infer the unfavorability of the missing evidence.

PJI 1:77.1 pertains to the "destruction or spoliation of evidence" and leaves it to the jury to determine whether:  (1) the alleged spoliator destroyed, altered, or caused the disappearance of the evidence; and (2) there was a reasonable explanation for the claimed destruction, alteration, or disappearance of the evidence.  As the comment states, the charges should be modified to remove from the jury those issues that have been resolved by stipulation or by a judicial finding (see 1A NY PJI3d 1:77 at 132 [2016]).

PJI 1:77.1 is obviously the type of charge imposed as a sanction. As the majority imposes the charge as a penalty under CPLR 3126, it would appear that it is requiring the trial court to use PJI 1:77.1.

By penalizing defendant with an adverse inference charge based on "willful" conduct, the majority has necessarily determined that the missing surveillance video was relevant, i.e., it would have been important to the jury in its deliberations (see *Pegasus*, 26 NY3d at 547 ["(w)here the evidence is determined to have been intentionally or wilfully destroyed, the relevancy of the destroyed documents is presumed"]).  However, as noted above, there is no support for this conclusion in the record and, in fact, the record is to the contrary. The only evidence in the record as to the importance of the video, or

lack thereof, is the representation from defendant's counsel that the video was reviewed and that it did not capture plaintiff's fall. Thus, the majority speculates as to the actual content of the video and imposes that speculation on the jury.

The majority also fails to address whether defendant will be permitted to present evidence as to the circumstances of the video's destruction and as to the video's contents to the extent it supports the reason for permitting its destruction pursuant to normal business practices, i.e., a reasonable explanation. The majority thereby overlooks the embedded best evidence rule objection this testimony may evoke (*see e.g. People v Cyrus*, 48 AD3d 150, 159, *lv denied* 10 NY3d 763) and, if sustained, the prejudice to defendant in being unable to support its alleged reasonable explanation for the video's destruction.

Lastly, requiring the trial court to deliver an undefined "adverse inference charge" will undoubtedly require the parties to conduct a "trial within a trial" addressing the spoliation issue. This will prolong the trial process and subject the jury to a tangential issue.

In the absence of clear direction from our Court, I foresee confusion and randomness at the trial court level leading to further grounds for appeal. For all of these reasons, I dissent from the majority's decision and would instead modify the order and remit the matter as described above.

Entered:  June 17, 2016                       Frances E. Cafarell
                                               Clerk of the Court