OPINION OF THE COURT
Pigott, J.
A party that seeks sanctions for spoliation of evidence must show that the party having control over the evidence possessed an obligation to preserve it at the time of its destruction, that the evidence was destroyed with a “culpable state of mind,” and “that the destroyed evidence was relevant to the party’s claim or defense such that the trier of fact could find that the evidence would support that claim or defense” (VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d 33, 45 [1st Dept 2012], quoting Zubulake v UBS Warburg LLC, 220 FRD 212, 220 [SD NY 2003]). Where the evidence is determined to have been intentionally or wilfully destroyed, the relevancy of the destroyed documents is presumed (see Zubulake, 220 FRD at 220). On the other hand, if the evidence is determined to have been negligently destroyed, the party seeking spolia *548 tion sanctions must establish that the destroyed documents were relevant to the party’s claim or defense (see id.).
On this appeal, we are asked to decide whether the Appellate Division erred in reversing an order of Supreme Court that imposed a spoliation sanction on the defendants. We hold that it did, and remand the matter to the trial court for a determination as to whether the evidence, which the Appellate Division found to be negligently destroyed, was relevant to the claims asserted against defendants and for the imposition of an appropriate sanction, should the trial court deem, in its discretion, that a sanction is warranted.
L
In 2005 and 2006, plaintiffs Pegasus Aviation I, Inc., Pegasus Aviation IV, Inc. and Pegasus Aviation V, Inc. (collectively, Pegasus) leased cargo planes to defendant Varig Logistica S.A. (VarigLog), a Brazilian air cargo company. Shortly thereafter, the MP defendants[1] purchased VarigLog out of a Brazilian bankruptcy. In early 2007, a dispute arose between one of the MP defendants (MP Volo) and its Brazilian shareholders concerning the distribution of proceeds from the sale of one of VarigLog’s wholly-owned subsidiaries. In July 2007, the Brazilian shareholders denied the MP defendants access to VarigLog’s offices, and shareholder litigation ensued. The end result was that the MP defendants were, in effect, “frozen out” of VarigLog’s affairs from July 2007 until April 1, 2008, when a Brazilian court removed the three Brazilian shareholders and appointed MP Volo to “take over the administration and management” of VarigLog under the supervision of a judicial oversight committee.
During the shareholder litigation, and while the MP defendants were “frozen out” of VarigLog, VarigLog defaulted on its *549 leases with Pegasus. In February 2008, Pegasus commenced litigation against only VarigLog in Florida state court for, among other things, breach of the lease agreements. Later, Pegasus voluntarily discontinued the Florida action and filed suit against both VarigLog and the MP defendants in New York County Supreme Court in October 2008. As relevant here, Pegasus sued VarigLog for breach of contract and conversion, and sought to hold the MP defendants liable for VarigLog’s conduct on an alter ego theory. In March 2009, VarigLog filed for bankruptcy. At all relevant times, VarigLog and the MP defendants were represented by separate counsel.
Pegasus served a notice to produce documents pursuant to CPLR 3120 that, as relevant here, sought electronically stored information (ESI) concerning Pegasus’s claims and VarigLog’s relationship with the MP defendants. VarigLog produced some documents in response, but that production was unsatisfactory to Pegasus, particularly with regard to the ESI.
Supreme Court appointed a discovery referee to assist Pegasus and VarigLog in resolving the dispute. During the first conference, which occurred in January 2010, counsel for VarigLog reported that VarigLog had experienced one or more computer “crashes” that impaired its ability to provide the requested ESI. VarigLog’s counsel later explained that between 2000 and 2008, VarigLog did not have a system of preserving emails, that emails were routinely stored on the computers of individual employees and that employee computers were returned empty when an employee left the company. Counsel also explained that beginning in March 2008, VarigLog had established a system whereby VarigLog’s ESI was backed up on a daily, weekly and monthly basis, but that computer crashes that occurred in February and March 2009 resulted in the loss of much of the ESI, and that data recovery efforts had proven unsuccessful.
Pegasus then moved for the imposition of sanctions against VarigLog and the MP defendants. It sought an order holding VarigLog in contempt for failing to comply with court orders, striking VarigLog’s answer, and imposing a trial adverse inference against the MP defendants for their failure to properly preserve electronic and paper records relevant to the action and within their control, albeit in the possession of their subsidiary, VarigLog. Pegasus argued that the MP defendants controlled VarigLog and therefore had a duty to impose a “litigation hold” to preserve certain VarigLog paper documents but failed to do so.
*550 Supreme Court granted Pegasus’s motion, holding that VarigLog’s failure to issue a “litigation hold” amounted to gross negligence as a matter of law, such that the relevance of the missing ESI was presumed.[2] Supreme Court also found that the MP defendants, having been charged by the Brazilian court with the duty to “manage” and “administer” VarigLog, were in “control” of VarigLog for purposes of putting a “litigation hold” into place to preserve the ESI, and their failure to do so amounted to gross negligence. The court therefore struck the answer of VarigLog and imposed a trial adverse inference sanction against the MP defendants with regard to ESI and paper records relevant to the action and within the MP defendants’ control. The MP defendants appealed the order of Supreme Court to the Appellate Division insofar as it granted Pegasus’s motion for a trial adverse inference instruction.
A divided Appellate Division reversed insofar as appealed from on the law and the facts and denied Pegasus’s motion for a trial adverse inference instruction (118 AD3d 428, 428 [1st Dept 2014]). The majority held that the record supported Supreme Court’s finding that the MP defendants had sufficient control over VarigLog so as to trigger a duty on their part to preserve the ESI, but that it could not be said that their “failure to discharge this duty was so egregious as to rise to the level of gross negligence” (id. at 432). It rejected Supreme Court’s holding that the MP defendants’ failure to institute a litigation hold amounted to gross negligence per se, and held that the facts of the case supported, at most, a finding of simple negligence (see id. at 432-434). Further, according to the majority, because Pegasus failed to prove that the lost ESI would have supported Pegasus’s claims, a trial adverse inference sanction could not stand (see id. at 435).
Justice Andrias concurred with the majority on the issue of the MP defendants’ control over VarigLog and their duty to preserve the ESI, and also agreed “that upon a contextual assessment of all pertinent facts” the MP defendants’ “failure to discharge [their] duty did not rise to the level of gross negligence” (id. at 436). However, in his view, because Supreme Court possessed the discretion to impose a spoliation sanction for negligent destruction of evidence, the matter should have been remanded to Supreme Court “for a determination as to *551 the extent to which [Pegasus has] been prejudiced by the loss of the evidence, and the sanction, if any, that should be imposed” (id. at 436-437 [Andrias, J., concurring in part and dissenting in part]).
Justice Richter dissented in full, arguing that the MP defendants’ “failure to take any meaningful steps to preserve evidence constitute [d] gross negligence” and that the adverse inference sanction should be affirmed (id. at 438 [Richter, J., dissenting]). She based her determination not only on the fact that the MP defendants failed to initiate a litigation hold, but also “on a close review of the specific facts of th[e] case” (id. at 440).
The Appellate Division granted Pegasus’s motion for leave to appeal, and, in its certified question, asks this Court to determine whether the Appellate Division’s order, which reversed Supreme Court, was properly made (2014 NY Slip Op 90118 [U] [1st Dept 2014]).[3] We answer that question in the negative.
IL
Our state trial courts possess broad discretion to provide proportionate relief to a party deprived of lost or destroyed evidence, including the preclusion of proof favorable to the spoliator to restore balance to the litigation, requiring the spoliator to pay costs to the injured party associated with the development of replacement evidence, or employing an adverse inference instruction at the trial of the action (see Ortega v City of New York, 9 NY3d 69, 76 [2007] [citations omitted]; CPLR 3126 [if a trial court determines that a party has destroyed evidence that “ought to have been disclosed . . . the court may make such orders with regard to the failure or refusal as are just”]).
Here, the order of the Appellate Division reversed the order of Supreme Court “on the law and the facts” (118 AD3d at 428). In its certified question to this Court, the Appellate Division certified that the “determination was made as a matter of law and not in the exercise of discretion.” However, we are not bound by the Appellate Division’s characterization in its certification order, and instead “look to see whether the Appel *552 late Division’s decision, regardless of its characterization, nonetheless reflects a discretionary balancing of interests” (Andon v 302-304 Mott St. Assoc., 94 NY2d 740, 745 [2000] [citations omitted]).
The trial court (which had presided over and supervised the discovery in the case for several years) and the Appellate Division reached different conclusions concerning the MP defendants’ level of negligence in failing to preserve the ESI. The trial court conducted a review of the facts, determined that the MP defendants exercised sufficient control over VarigLog,[4] and held that the failure of the MP defendants to institute a litigation hold amounted to gross negligence. On appeal, all five Appellate Division Justices agreed with Supreme Court’s assessment that the MP defendants possessed “control” over VarigLog such that it had a duty to preserve the ESI, but the three-Justice majority found that “[t]he facts of this case” did not support a “finding of gross negligence” (118 AD3d at 432). A fourth Justice made a “contextual assessment of all pertinent facts” and reached the same conclusion (id. at 436 [Andrias, J., concurring in part and dissenting in part]). The dissenting Justice’s conclusion that the MP defendants were grossly negligent was “based on the unique facts of [the] case and the significant control [the MP defendants] had over VarigLog at the time this action was commenced” (id. at 440 [Richter, J., dissenting]). Thus, whether the MP defendants’ “culpable mental state” rose to the level of gross negligence, as opposed to ordinary negligence, constituted differing factual determinations by the trial court and the Appellate Division.
Where the Appellate Division reaches a factual conclusion different from that reached by the trial court, “the scope of our review is limited to determining whether the evidence of record . . . more nearly comports with the trial court’s findings or with those of the Appellate Division” (Friedman v State of New York, 67 NY2d 271, 284-285 [1986]). In our view, the record evidence comports more with the Appellate Division majority’s findings.
The trial court found that it was the lack of a litigation hold, and not the computer crashes themselves, that resulted in the *553 destruction of the requested documents. However, the trial court incorrectly stated that the MP defendants were part of the Florida litigation, and that once they were, they were required to ensure that a litigation hold was in place, pointing to the fact that because the MP defendants were ordered by the Brazilian court to “manage and administer” VarigLog, the MP defendants were running VarigLog and therefore had the means of implementing a litigation hold. However, in this instance, the failure to institute a litigation hold did not amount to gross negligence per se, as the trial court held. Rather, a party’s failure to institute a litigation hold is but one factor that a trial court can consider in making a determination as to the alleged spoliator’s culpable state of mind.
In contrast to the trial court’s reasoning, the Appellate Division majority noted that Pegasus did not adduce evidence that any steps were taken to defeat the computer backup system in the months leading up to the crashes, nor did Pegasus claim that the MP defendants themselves caused the crashes. The Appellate Division majority considered a number of factors in reaching its ultimate holding that the MP defendants’ conduct in failing to preserve the ESI was not grossly negligent. Pertinent to that finding was the fact that VarigLog was represented by its own counsel when the MP defendants were brought into the litigation in April 2008, and there was no evidence that the MP defendants had reason to believe that VarigLog’s counsel was not providing VarigLog adequate advice concerning ESI preservation. Another factor relied on by the majority was that the MP defendants adequately responded to all of Pegasus’s discovery demands directed at them, thus negating any inference that the MP defendants were reckless concerning Pegasus’s demands made on them. Finally, the majority found that notwithstanding the fact that the MP defendants had exercised practical control over VarigLog, the record evidence indicated that VarigLog and the MP defendants were separate entities, with each possessing their own offices, staff, operations and computer systems.
These aforementioned facts substantiated the Appellate Division’s ultimate conclusion that, at most, the MP defendants’ failures amounted to “a finding of simple negligence” (118 AD3d at 432-433). The evidence in the record adequately comports with the Appellate Division majority’s holding.
On this record, we see no reason to disturb the unanimous finding of the lower courts that the MP defendants had suf *554 ficient control over VarigLog to trigger a duty on its part to preserve the ESI. Nor is there any basis to disturb the findings of fact by the Appellate Division that the MP defendants were negligent in failing to discharge that duty. The Appellate Division majority erred, however, to the extent that it determined that Pegasus had not attempted to make a showing of relevance (118 AD3d at 433 n 7) and chose to conduct its own analysis of the relevance issue without taking into account Pegasus’s arguments in that regard, which were contained in its appellate brief.[5] Thus, although the Appellate Division possesses the authority to make findings of fact that is as broad as the trial court, in this instance, where it all but ignored Pegasus’s arguments concerning the relevance of the documents, we conclude that the prudent course of action is to remit the matter to Supreme Court for a determination as to whether the negligently destroyed ESI was relevant to Pegasus’s claims against the MP defendants and, if so, what sanction, if any, is warranted.
Finally, the Appellate Division erroneously stated that a trial adverse inference charge in an alter ego case such as this one would be “tantamount to granting [Pegasus] summary judgment” (118 AD3d at 436). Such adverse inference charges have been found to be appropriate even in situations where the evidence has been found to have been negligently destroyed (see e.g. Strong v City of New York, 112 AD3d 15, 22-24 [1st Dept 2013] [stating that adverse inference charge at trial “may be . . . appropriate” where the evidence was negligently destroyed]; Marotta v Hoy, 55 AD3d 1194, 1197 [3d Dept 2008] [holding that Supreme Court did not abuse its discretion in determining that the plaintiff was entitled to an adverse inference instruction as a sanction for negligent spoliation]; Tomasello v 64 Franklin, Inc., 45 AD3d 1287, 1288 [4th Dept 2007] [adverse inference charge appropriate sanction for negligent spoliation]). Contrary to the Appellate Division majority’s contention, a trial adverse inference sanction would not be akin to granting summary judgment to Pegasus on its alter ego claim, since such a charge is permissive and can be appropriately tailored by the trial court (see PJI 1:77; see also Gogos v Modell’s Sporting Goods, Inc., 87 AD3d 248, 255 [1st Dept 2011]).
*555 Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion and the certified question is answered in the negative.

. For purposes of background, the MP defendants consist of a group of commonly controlled New York-based firms and entities under their control. Defendants MatlinPatterson Global Advisers, LLC, MatlinPatterson Global Opportunities Partners II LP, and MatlinPatterson Global Opportunities Partners (Cayman) II LP formed defendant Volo Logistics LLC (MP Volo), a Delaware company that is a wholly-owned subsidiary of defendant Oskars Investments Ltd. MP Volo and three Brazilian shareholders/co-investors formed Volo do Brasil, S.A. (VdB), a Brazilian corporation, which purchased VarigLog out of a Brazilian bankruptcy proceeding in 2006. Brazilian aviation law requires that Brazilian citizens or entities must control at least 80% of the voting interest in a Brazilian airline and, as a result, the Brazilian shareholders controlled 80% of the voting interest in VdB while MP Volo owned the remaining 20%.

. VarigLog did not appeal Supreme Court’s order and is not a party to this appeal.

. Because the Appellate Division focused solely on the destruction of ESI and did not address the issue concerning the paper records, our analysis is similarly limited to the ESI evidence.

. Our utilization of the word “control” for purposes of this opinion is solely in reference to the issue of whether the MP defendants possessed sufficient control over VarigLog so as to trigger a duty on the MP defendants’ part to see to it that VarigLog was preserving the ESI. At the trial of this action, Pegasus will still be required to meet all of the elements of its alter ego cause of action against the MP defendants.

. Indeed, Pegasus made a motion to reargue addressing this error, and, rather than granting that motion, the Appellate Division granted Pegasus leave to appeal to this Court (2014 NY Slip Op 90118[U] [1st Dept 2014]).