Page v Niagara Falls Mem. Med. Ctr. (2018 NY Slip Op 08764)





Page v Niagara Falls Mem. Med. Ctr.


2018 NY Slip Op 08764


Decided on December 21, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 21, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, LINDLEY, AND DEJOSEPH, JJ.


889 CA 17-02160

[*1]PATRICIA PAGE AND JAMES PAGE, PLAINTIFFS-RESPONDENTS,
v
NIAGARA FALLS MEMORIAL MEDICAL CENTER, DEFENDANT-APPELLANT, ET AL., DEFENDANTS. 






ROACH, BROWN, MCCARTHY & GRUBER, P.C., BUFFALO (KEVIN V. HUTCHESON OF COUNSEL), FOR DEFENDANT-APPELLANT.
HOGANWILLIG, PLLC, AMHERST (DIANE R. TIVERON OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS. 


 Appeal from an order of the Supreme Court, Niagara County (Sara Sheldon, A.J.), entered August 29, 2017. The order, insofar as appealed from, granted that part of the motion of plaintiffs seeking an adverse inference charge against defendant Niagara Falls Memorial Medical Center. 
It is hereby ORDERED that the order insofar as appealed from is reversed on the law without costs and the motion is denied in its entirety.
Memorandum: Patricia Page (plaintiff) was admitted to Niagara Falls Memorial Medical Center (defendant) for surgery in August 2008. Following surgery, a patient-controlled analgesia infusion pump was connected to plaintiff's intravenous line. The pump allowed plaintiff to self-administer pain medication by pressing a button, subject to a maximum dosage feature that permitted delivery of the next dose only after the expiration of a programmed delay period. While monitored by defendant's nursing staff, plaintiff used the pump for approximately 10 hours without incident. Plaintiff thereafter experienced an adverse medical event, received an emergency opioid-reversing medication, and was transferred to the intensive care unit for further treatment.
Plaintiff and her husband commenced this action in February 2011 to recover damages for injuries allegedly sustained by plaintiff as a result of, inter alia, defendant's alleged medical malpractice and negligence. Following preliminary matters, including the filing of an amended complaint adding the manufacturers of the pump as defendants and document discovery showing that defendant possessed 12 pumps at the time of the incident and could not identify the specific pump used by plaintiff, the litigation stagnated, and Supreme Court thereafter granted defendants' respective motions pursuant to CPLR 3126 (3) seeking dismissal of the amended complaint against them. On plaintiffs' prior appeal, we substituted our discretion for that of the court and concluded that dismissal of the amended complaint pursuant to CPLR 3126 (3) was not warranted under the circumstances of this case, and we remitted the matter to Supreme Court for further proceedings not inconsistent with our decision (Page v Niagara Falls Mem. Med. Ctr., 141 AD3d 1084, 1085 [4th Dept 2016]). Following further proceedings upon remittal, plaintiffs moved for, among other things, sanctions against defendant for spoliation of the pump. Defendant appeals from an order granting that part of plaintiffs' motion seeking an adverse inference charge at trial as a sanction for spoliation of evidence.
"Under the common-law doctrine of spoliation, when a party negligently loses or intentionally destroys key evidence, the responsible party may be sanctioned under CPLR 3126 . . . Supreme Court has broad discretion in determining what, if any, sanction should be imposed [*2]for spoliation of evidence . . . It may, under appropriate circumstances, impose a sanction even if the destruction occurred through negligence rather than wilfulness, and even if the evidence was destroyed before the spoliator became a party, provided [the party] was on notice that the evidence might be needed for future litigation" (Mahiques v County of Niagara, 137 AD3d 1649, 1650-1651 [4th Dept 2016] [internal quotation marks omitted]; see Bill's Feed Serv., LLC v Adams, 132 AD3d 1400, 1401 [4th Dept 2015]). The party seeking sanctions for spoliation of evidence has the burden of showing "that the party having control over the evidence possessed an obligation to preserve it at the time of its destruction, that the evidence was destroyed with a culpable state of mind, and that the destroyed evidence was relevant to the party's claim or defense such that the trier of fact could find that the evidence would support that claim or defense" (Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d 543, 547 [2015] [internal quotation marks omitted]; see Burke v Queen of Heaven R.C. Elementary Sch., 151 AD3d 1608, 1608-1609 [4th Dept 2017]).
We agree with defendant that plaintiffs "failed to establish that . . . defendant intentionally or negligently failed to preserve crucial evidence after being placed on notice that the evidence might be needed for future litigation" (Aponte v Clove Lakes Health Care & Rehabilitation Ctr., Inc., 153 AD3d 593, 594 [2d Dept 2017]). Plaintiffs asserted in their motion papers that defendant was on notice that the pump malfunctioned by administering an improper dosage of medication that caused severe injuries to plaintiff and thus that defendant had an obligation to preserve the pump by immediately sequestering it or recording its serial number. That assertion, however, is based on the unsubstantiated claims in the affirmation of plaintiffs' counsel and allegations set forth in their response to interrogatories. In addition, plaintiffs relied on a statement by plaintiff's husband that defendant's nursing staff had been informed that the pump appeared to dispense medication every time the button was pushed. That statement, which was made in a letter of complaint the husband wrote to a state agency nearly 2½ years after the incident, is belied by the agency's responsive letter, also submitted by plaintiffs, which indicated that an investigation revealed no improprieties, as well as by contemporaneous medical records submitted by plaintiffs demonstrating that, despite numerous attempts by plaintiff to self-administer the medication, the pump did not dispense an excess of medication.
Furthermore, defendant's submissions in opposition to the motion established that the pump was programmed and operating properly, and was administering medication consistent with the prescribed amount after it was first connected to plaintiff. Defendant's nursing staff thereafter assessed plaintiff's condition every two hours and found that the pump was dispensing an appropriate amount of medication. After plaintiff experienced the adverse event that was treated with an emergency opioid-reversing medication, defendant's nursing staff evaluated whether the pump was programmed properly; determined the number of attempted injections, the number of completed injections, and the cumulative dosage administered; and verified that the pump had dispensed an appropriate amount of medication. Contrary to plaintiffs' contention, defendant's submissions established that the nursing staff contemporaneously determined, by reading the screen of the pump and visually inspecting the marked intravenous bag, that plaintiff had received a cumulative dosage that was far less than the maximum dosage prescribed for the period of time during which plaintiff received medication from the pump. Thereafter, pursuant to defendant's normal business practices, the pump was sent to central services for cleaning by biomedical technicians and then returned to service in the hospital among the other pumps in defendant's possession. Defendant did not, in the ordinary course of business, track which of its pumps was assigned to a particular patient, and thus the specific pump used by plaintiff could not be identified.
Based on the foregoing, the record establishes that defendant had no notice that the adverse event experienced by plaintiff related to any malfunction of the pump such that defendant would have an obligation to act beyond its normal business practices by immediately sequestering the pump in anticipation of litigation or by recording its serial number (see Aponte, 153 AD3d at 594; cf. Enstrom v Garden Place Hotel, 27 AD3d 1084, 1085 [4th Dept 2006]). Where, as here, there is an "absence of pending litigation or notice of a specific claim, a defendant should not be sanctioned for discarding [or failing to preserve] items in good faith and pursuant to its normal business practices" (Bill's Feed Serv., LLC, 132 AD3d at 1401). Furthermore, even assuming, arguendo, that the court properly considered certain evidence submitted by plaintiffs for the first time in their reply papers because that evidence was directly responsive to defendant's opposition (see Studer v Newpointe Estates Condominium, 152 AD3d [*3]555, 557 [2d Dept 2017]), we conclude that none of that evidence warrants a contrary result.
We also agree with defendant that the court abused its discretion to the extent that it determined that a spoliation sanction was warranted based on defendant's ostensible failure to comply with an order to show cause signed in April 2011. The order to show cause was jurisdictionally deficient inasmuch as it is undisputed that the record is devoid of any evidence that plaintiffs served defendant in accordance with the provisions of the order to show cause (see Matter of Flynn v Orsini, 286 AD2d 568, 568 [4th Dept 2001]). It also was procedurally deficient inasmuch as plaintiffs purportedly sought pre-action preservation of evidence pursuant to CPLR 3102 (c) even though they had already commenced the action against defendant (see Matter of Johnson v Union Bank of Switzerland, AG, 150 AD3d 436, 436 [1st Dept 2017]). Even if it was not jurisdictionally and procedurally deficient, the order to show cause was sought and signed over 2½ years after the incident, and the record establishes that it was by then not possible for defendant to sequester or even to identify the specific pump used by plaintiff.
Contrary to the dissent's assertion, the court did not defer until trial its disposition of plaintiffs' motion insofar as it sought a spoliation sanction inasmuch as the court, consistent with both the relief requested in the motion and its bench decision determining that defendant spoliated the pump, granted that part of the motion seeking an adverse inference charge at trial as a sanction for spoliation of evidence (see generally Pegasus Aviation I, Inc., 26 NY3d at 554; Manley v Raspberries Café & Creamery, Inc., 126 AD3d 1391, 1392 [4th Dept 2015]; Anesthesia Assoc. of Mount Kisco, LLP v Northern Westchester Hosp. Ctr., 44 AD3d 975, 976 [2d Dept 2007]). Moreover, contrary to the dissent's further assertion, we have not discredited any of the submissions; instead, we have simply evaluated whether plaintiffs, in view of all of the submissions, have adequately shown that defendant was on notice of a pump malfunction such that it had an obligation to preserve the pump in a manner beyond its normal business practices. That showing has not been made here (see Aponte, 153 AD3d at 594; Bill's Feed Serv., LLC, 132 AD3d at 1401).
All concur except Whalen, P.J., who dissents and votes to dismiss the appeal in the following memorandum: I respectfully dissent inasmuch as I would dismiss the appeal as premature. A trial court possesses "broad discretion to provide proportionate relief to a party deprived of lost or destroyed evidence" (Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d 543, 551 [2015] [emphasis added]; see Ortega v City of New York, 9 NY3d 69, 76 [2007]), which may include an adverse inference charge "appropriately tailored by the trial court" (Pegasus Aviation I, Inc., 26 NY3d at 554). Thus, a court abuses its discretion where it fails to appropriately tailor a sanction for negligence or misconduct to that necessary "to restore balance to the litigation" (Ortega, 9 NY3d at 76).
Here, the record is insufficient to allow effective appellate review of whether Supreme Court abused its discretion by imposing a disproportionate sanction for the alleged misconduct of Niagara Falls Memorial Medical Center (defendant). The court failed to make any findings of fact whether defendant had an obligation to preserve either the patient-controlled analgesia infusion pump utilized for the treatment of Patricia Page (plaintiff) or the electronic data stored on that pump at the time it was "destroyed;" with what culpable state of mind the pump or data was destroyed; or whether the pump or the data was relevant to plaintiffs' action (see VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d 33, 45 [1st Dept 2012]). The court further failed to specify the adverse inference instruction warranted by defendant's alleged misconduct, a notable omission given the difference in severity between an instruction permitting the jurors to decide for themselves whether defendant had sufficient notice of impending litigation at the time it destroyed relevant evidence and an instruction that defendant willfully destroyed evidence presumed to be supportive of plaintiffs' claim as a matter of law (compare PJI 1:77.1, with PJI 1:77.2).
Moreover, counsel for the parties agreed at oral argument on this appeal that the court expressly deferred until trial making any further determination on the specific adverse inference charge that was warranted. Inasmuch as the court failed to make any findings of fact in support of the instant order, the court effectively deferred until trial ruling on every essential element of plaintiffs' motion with respect to the spoliation sanction, including the severity of the sanction itself. I would therefore dismiss the appeal because "[a] party may not appeal as of right from so much of an order as merely defers disposition of a motion until trial" (Kaplan v Rosiello, 16 [*4]AD3d 626, 626 [2d Dept 2005]).
Further, to the extent that the majority substitutes its own discretion for that of the court and concludes that no adverse inference charge is warranted on this record (see generally Hawe v Delmar, 148 AD3d 1788, 1789 [4th Dept 2017]), it places too high an evidentiary burden on plaintiffs to establish their entitlement to have one or more of the elements of their spoliation claim submitted to the jury (see PJI 1:77.1). In concluding that defendant lacked notice that the evidence might be needed for future litigation, the majority discredits as unsubstantiated plaintiffs' allegation that the pump malfunctioned by administering an improper dosage of medication. There is no dispute, however, that plaintiff experienced an adverse medical event requiring an emergency opioid-reversing medication while a patient-controlled analgesia infusion pump was connected to plaintiff's intravenous line and that she was transferred to the intensive care unit for further treatment as a result. The relevant evidence that might further substantiate plaintiffs' claim that defendant was on notice of the potential for litigation is the pump and the data maintained therein regarding the dispensation of opioid medication to plaintiff in the hours leading up to that event. The majority therefore faults plaintiffs for the failure to produce the very evidence for which plaintiffs seek a spoilation sanction (see generally Sage Realty Corp. v Proskauer Rose LLP, 275 AD2d 11, 17 [1st Dept 2002], lv denied 97 NY2d 608 [2002]). 
Finally, the majority improperly makes credibility determinations with respect to the evidence submitted on the motion. The majority discounts the unsworn letter written to a state agency by plaintiff's husband alleging that the pump appeared to be malfunctioning on the day in question while simultaneously crediting the similarly unsworn agency response letter rejecting those allegations. The majority also concludes that the evidence defendant submitted in opposition to the motion establishes "that the pump was programmed and operating properly, and was administering medication consistent with the prescribed amount after it was first connected to plaintiff." That evidence consists of the testimony of defendant's employees, who were engaged in plaintiff's care at the time in question. By crediting the testimony submitted by defendant, the majority ignores the purpose for which plaintiffs sought this evidence: to assess and potentially challenge the credibility of that testimony with contemporaneous documentary evidence, such as the pump data possessed by defendant. In my opinion, the court would have appropriately exercised its discretion by instructing the jury to resolve those issues of fact related to plaintiffs' spoliation claim. Inasmuch as the court failed to make any specific findings, I would dismiss the appeal as premature.
Entered: December 21, 2018
Mark W. Bennett
Clerk of the Court