**Riptide Autonomous Solutions, LLC v BAE Sys. Info. & Elec. Sys. Integration Inc.**

2025 NY Slip Op 30052(U)

January 7, 2025

Supreme Court, New York County

Docket Number: Index No. 652078/2022

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 48

-------------------------------------------------------------------------X

RIPTIDE AUTONOMOUS SOLUTIONS, LLC, and
JEFFREY SMITH,

|  | |
|---|---|
| **INDEX NO.** | 652078/2022 |
| **MOTION DATE** | -- |
| **MOTION SEQ. NO.** | 017 |

Plaintiffs,

- v -

BAE SYSTEMS INFORMATION AND ELECTRONIC
SYSTEMS INTEGRATION INC.,

Defendant.

**DECISION + ORDER ON
MOTION**

-------------------------------------------------------------------------X

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 017) 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 257

were read on this motion to/for                             SANCTIONS                             .

Motion sequence number 017 stems from defendant BAE Systems Information and Electronic Systems Integration Inc.'s (BAE) deletion of the email accounts of Sarah Smith and Jeffrey Smith, former employees of plaintiff Riptide Autonomous Solutions, LLC (Riptide) and BAE.

Riptide moves by order to show cause for an order granting Riptide the following relief: (i) conclusive spoliation inferences for all identified missing evidence, (ii) a burden shift requiring BAE to prove that it used commercially reasonable efforts and good faith in achieving revenue during the earn-out period, and (iii) an inference that all improperly deleted documents would have supported Riptide's claim that BAE failed to engage in commercially reasonable efforts and good faith. Counterclaim defendant Jeffrey Smith joins Riptide's motion. (NYSCEF Doc. No. [NYSCEF] 246, Notice of Joinder.)

[* 1]

## Background

Riptide designed and manufactured unmanned underwater vehicles for defense, commercial, and research applications. (NYSCEF 1, Complaint ¶ 2.) Pursuant to an April 12, 2019 Asset Purchase Agreement, Riptide sold its operating assets to BAE. (*Id.* ¶ 1.) After the acquisition, Riptide was entitled to three earn-out payments not to exceed $26 million, which were tied to the revenue from Riptide business and paid during the earn-out periods of calendar years 2019, 2020, and 2021. (*See id.* ¶¶ 5, 18-20.) Riptide's sole remaining cause of action against BAE is for breach of the APA by failing to "act in good faith and use commercially reasonable efforts to operate [Riptide] Business with respect to achieving revenue of Business Products and Services in the Earn-Out Period." (*Id.* ¶ 63 internal quotation marks and citation omitted]; NYSCEF 118, Decision and Order at 1 [mot. seq. no. 006].) BAE alleges counterclaims against Riptide and Jeffrey Smith for (i) fraudulent inducement seeking to rescind the APA and declare the same void ad initio, (ii) fraudulent inducement seeking damages, (iii) breach of APA/contractual indemnification, and (iv) fraud. (NYSCEF 122, Answer with Counterclaim at 24 ¶ 1, at 31-34 ¶¶ 37-60.) The counterclaims are predicated on the allegation that Riptide and Jeffrey Smith "falsely represented that the Riptide product functioned at depths of up to 300 meters for more than 30 hours." (*Id.* at 31 ¶ 38; *see id.* at 32-34 ¶¶ 45, 52, 58.)

Riptide transferred its email accounts, including the Smiths' email account, to BAE as a result of the acquisition. (NYSCEF 208, Riptide Nov. 19, 2023 email at 2/5.) BAE deleted the Smiths' Riptide email accounts 180 days after the deal, i.e. around

December 2019. (*See* NYSCEF 255, tr at 22:19-23 [oral argument]; NYSCEF 225, tr at 277:4-13 [Jeffrey Smith depo] [stating that deal closed in May 2019].)

Following the acquisition, the Smiths began working for BAE. Jeffrey Smith and Sarah Smith left BAE in May 2021, and February 2022, respectively. (NYSCEF 230, tr at 172:12-14 [Sarah Smith depo]; NYSCEF 216, Sarah Smith aff ¶ 3.) Pursuant to BAE's document retention policy, the Smiths' BAE email accounts were disabled upon their departure from BDO and their emails were purged. BAE's counsel explained that

> "Mr. and Mrs. Smith left BAE Systems prior to the legal hold going into effect on March 18, 2022. Pursuant to BAE Systems' document retention policies and procedures, departing employees' accounts are disabled on the day of their departure and associated documents (including emails) that are not either designated as a company record or subject to a legal hold are reset from a 180-day to a 0-day purge status. Once purged, the emails and the account are not recoverable. BAE Systems complied with that policy when both Mr. and Mrs. Smith left BAE Systems. Consequently, BAE Systems cannot produce their PST files." (NYSCEF 209, Gregory M. Williams[1] Dec. 29, 2023 email at 2-3/5.)[2]

BAE put the litigation hold in place on March 18, 2022. (*Id.* at 2/5.) Riptide initiated this action on May 4, 2022. (NYSCEF 1, Complaint.)

**Discussion**

Timeliness

As early as August 8, 2023, Riptide learned that the Smiths' email accounts were deleted. (*See* NYSCEF 209, Williams Dec. 29, 2023 email at 3/5.) On September 12,

---

[1] Williams is BAE's counsel. (NYSCEF 222, Williams aff ¶ 1.)
[2] Despite lack of clarity in Riptide's papers, the court assumes that this motion is based on deletion of the Smiths' Riptide and BAE email accounts. The Riptide email accounts, however, were deleted around December 2019 (*see supra* at 2-3), i.e. prior to the November 20, 2020 date when Riptide argues the duty to preserve attached. Additionally, in its reply brief, Riptide alleges for the first time deletion of email accounts of certain additional BAE employees which is not before the court since you cannot raise issues for the first time on reply. (NYSCEF 237, Reply Brief at 4/18 n 2.)

[* 3]

2023, the court ordered that any discovery motions shall be filed immediately, otherwise waived. (*See* NYSCEF 143, Amended PC Order ¶ 6.) This motion was filed on June 17, 2024. (*See* NYSCEF 201, Proposed OSC [mot. seq. no. 017].) The court rejects BAE's argument that this motion should be denied as untimely. This is not a discovery motion that could have been filed immediately; more productions by BAE followed in 2023. (*See* NYSCEF 210 & 211, email chains.) Indeed, Riptide explains that it "was waiting to see if later productions or alternative sources would cure the loss of these e-mail accounts" and "refrained from wasting the Court's time and resources until it was certain that these items were indeed missing." (NYSCEF 237, Reply Brief at 15-16/18.)

Spoliation

"Under the common-law doctrine of spoliation, when a party negligently loses or intentionally destroys key evidence, the responsible party may be sanctioned under CPLR 3126." (*Delmur, Inc. v School Constr. Auth.*, 174 AD3d 784, 786 [2nd Dept 2019] [internal quotation marks and citations omitted].)

> "A party that seeks sanctions for spoliation of evidence must show [1] that the party having control over the evidence possessed an obligation to preserve it at the time of its destruction, [2] that the evidence was destroyed with a culpable state of mind, and [3] that the destroyed evidence was relevant to the party's claim or defense such that the trier of fact could find that the evidence would support that claim or defense." (*Pegasus Aviation I, Inc. v Varig Logistica S.A.*, 26 NY3d 543, 547 [2015] [internal quotation marks and citations omitted].)

An obligation to preserve relevant evidence arises when a party reasonably anticipates litigation, that is, when a party "is on notice of a credible probability that it will become involved in litigation, seriously contemplates initiating litigation, or when it takes specific actions to commence litigation." (*VOOM HD Holdings LLC v EchoStar Satellite L.L.C.*, 93 AD3d 33, 43 [1st Dept 2012] [internal quotation marks and citation omitted].)

In the commercial context, notice of a credible probability of litigation has been found where a party repeatedly threatens to terminate an agreement and transmits numerous breach letters. (*See id.* at 43.) A duty to preserve has also been found to have been triggered when a party notified an adversary that the party would consult legal counsel and consider commencing litigation. (*See Ocwen Loan Servicing, LLC v Ohio Pub. Employees Retirement Sys.*, 49 Misc 3d 1219[A], 2015 NY Slip Op 51775[U], *6 [Sup Ct, NY County 2015].)

*Duty to Preserve*

Riptide argues that BAE's duty to preserve was triggered when BAE sent the November 30, 2020 Notice of Indemnification to Riptide.

As stated on the record on July 25, 2024, this argument is rejected. (NYSCEF 255, tr at 41:11:17 [oral argument].) First, the indemnification letter alleges misrepresentations by Riptide and relate to the portion of the purchase price held in escrow in order to cover potential losses related to breaches. (*See* NYSCEF 204, Nov. 30, 2020 Letter and Indemnification Claim.) Riptide's allegations in its breach of the APA cause of action are on a different subject, i.e. that BAE failed to use commercially reasonable efforts to operate the Riptide business post-acquisition leading to reduced earn-out payments to Riptide. (*See e.g.* NYSCEF 1, Complaint ¶ 63.) The November 30, 2020 letter and indemnification claim could not have triggered BAE's obligations to preserve evidence in anticipation of Riptide's claims for breach of the APA. (*See World Trade Centers Assn., Inc. v Port Auth. of New York and New Jersey*, 2018 WL 1989616, *5, 2018 US Dist LEXIS 56894, *13 [SD NY, Apr. 2, 2018, No. 15CIV7411LTSRWL] [stating that although plaintiff "had a duty to preserve evidence

related to [another] dispute" between parties since June 2011, "that duty did not extend to the trademark dispute at issue here" where the duty to preserve was triggered in January 2012 (citation omitted)], *report and recommendation adopted sub nom. World Trade Centers Assn. v Port Auth. of New York and New Jersey*, 2018 WL 1989556, 2018 US Dist LEXIS 69668 [SD NY, Apr. 25, 2018, No. 15 CV 7411-LTS-RWL]; *Voom HD Holdings, LLC v Echostar Satellite, L.L.C.*, 2010 NY Slip Op 33759[U], *24 [Sup Ct, NY County 2010] ["Typically, the duty to preserve evidence attaches as of the date the action is initiated or when a party knows or should know that the evidence may be *relevant to future litigation*" (emphasis added; internal quotation marks and citations omitted)], *affd* 93 AD3d 33 [1st Dept 2012]; *see also Zubulake v UBS Warburg LLC*, 220 FRD 212, 218 [SD NY 2003] ["The duty also extends to information … which is 'relevant to the subject matter involved in the action'" (quoting Fed Rules Civ Pro rule 26 [b][1])].)

Second, even if the November 30, 2020 communication could trigger the duty to preserve in relation to Riptide's claim, as Riptide argues, on December 21, 2020, BAE sent a letter informing that it elected to release the escrow funds "in order to focus the entire BAE Systems team, including our heritage Riptide employees, on resolving these issues and mitigating the resulting damages." (NYSCEF 206, Dec. 21, 2020 letter.) This letter evidences BAE's intention not to litigate.

The argument that BAE's counterclaims invoke the misrepresentation that were alleged in the November 30, 2020 letter and indemnification claim is unavailing. That BAE eventually asserted the counterclaims alleging such misrepresentations in February 2023 does not demonstrate that BAE seriously contemplated initiating litigation in the fall of 2020. Indeed, the record does not support such a conclusion.

[* 6]

Additionally, Riptide fails to explain how the deletion of the Smiths' email account impairs Riptide's defense of the counterclaims. Indeed, Sarah Smith only recalls one specific email by a BAE "apologizing … for the way that BAE mishandled the Riptide business," which is irrelevant to the defense of the counterclaims. (NYSCEF 216, Sarah Smith aff ¶ 8; see id. ¶ 9.)[3] Neither does Riptide seek any specific sanctions in relation to such defense. Instead, Riptide seeks burden shifting and inference sanctions solely in relation to its breach of APA claim.

Alternatively, Riptide argues that Jeffrey Smith's December 22, 2020 email triggered the duty to preserve. The email was sent in the context of an internal BAE discussion as to how to respond to a customer inquiry regarding pricing on a Riptide product. A BAE employee proposed to respond that "we are booked for most of 2021" and new orders for 2022 will be accepted in May or June of 2021 "[r]ather than saying we are not currently selling and are in re-design mode." (NYSCEF 239, email chain at 3/4.) Jeffrey Smith responded on December 22, 2020:

> "Riptide shareholders have a multi-year earn out based on revenue on the acquisition that requires that BAE Systems sells vehicles and acts in good faith to maximize that revenue. Halting quotes and thereby sales and revenue, violates the good faith terms of the acquisition agreement. In my opinion, so does pulling out of the commercial model given BAE's assurances that they would maintain the commercial model at the time of sale. This is my comment. It is not from the Riptide attorney. I'd suggest this decision be reassessed quickly in light of the acquisition agreement which you may not be fully aware of." (Id. at 2/4.)

This email is insufficient to put BAE on notice of Riptide's potential litigation; there is no threat of litigation. (Cf. Karsch v Blink Health Ltd., 2019 WL 2708125, *2, 18, 2019 US Dist LEXIS 106971, *4, 48-49 [SD NY, June 20, 2019, No. 17CV3880VMBCM]

---

[3] As to Jeffrey Smith's emails, Riptide proffers no evidence in form of an affidavit or otherwise explaining relevance of his deleted emails.

[duty to preserve triggered when plaintiff's attorney sent letter to defendants counsel accusing accused defendants of securities fraud, common law fraud, breach of fiduciary duty, and breach of contract and threatening litigation unless defendants reconsidered their course of action].)  Indeed, as discussed *infra*, the record demonstrates that the parties remained in negotiations regarding the earn-out payments to Riptide until the end of 2021, the last year of the earn-out period, and the litigation was not initiated until May 2022.  "[T]he mere existence of a dispute" which may be evidenced by the December 22, 2020 email does "not mean that the parties should reasonably have anticipated litigation at that time and taken steps to preserve evidence."  (*Treppel v Biovail Corp.*, 233 FRD 363, 371 [SD NY 2006].)

Riptide next argues that BAE's duty to preserve was triggered by BAE's October 28, 2021 letter.

This argument is likewise rejected.  In its October 13, 2020 email, Riptide raised an issue of extending the three-year earn-out period due to "[d]elays and financial impacts due to COVID-19," "[i]ntegration and implementation of BAE Systems process and policies," "[d]elays in providing vehicle quotes to customers," and "[d]elays in moving to a new manufacturing facility."  (NYSCEF 212, email chain at 5-6/6.)  In the October 28, 2021 letter, BAE stated that it "would like to make an offer in good faith to the Board of Managers in an effort to close out this matter without further extending the earn-out period."  (NYSCEF 213, BAE Oct. 28, 2021 letter at 1.)  BAE offered to recognize for the purposes of calculating the 2021 earn-out payment certain revenue that was delayed.  (*Id.*)  Riptide responded on November 24, 2022, that the offer "is perceived as a sincere effort to try to address what [the Riptide] stakeholders view as

[* 8]

some concerning issues with the situation" and offered a number of arguments in support of its request that "BAE fulfill the whole of the earnout. While there may be room for some creative ways to fulfil this with some delay to allow payment flexibility, this is Riptide's considered request." (NYSCEF 214, email chain at 4-5/5.) This correspondence shows that "[r]ather than threatening impending litigation," the parties continue to be "willing to explore a negotiated resolution"; in such circumstances litigation is not reasonably anticipated. (*Cache La Poudre Feeds, LLC v Land O'Lakes, Inc.*, 244 FRD 614, 622 [D Colo] [collecting cases].)

Although BAE emails sent shortly thereafter indicate that two BAE employees contemplated that "[t]here may be a legal action coming or at least shenanigans related to Riptide" (*see* NYSCEF 215, email chain at 2/5), "[m]erely because one or two employees contemplate the possibility [of a lawsuit] does not generally impose a firm-wide duty to preserve." (*Zubulake*, 220 FRD at 217.)[4]

*Culpable State of Mind; Relevance*

As Riptide has failed to establish that BAE was under a duty to preserve evidence when the Smiths' email accounts were deleted, the court need not consider the balance of parties' arguments.

Even if a duty to preserve was triggered prior to the date when the email accounts were deleted, Riptide fails to show that BAE acted with gross negligence.

---

[4] At oral argument, BAE's attorney explained that the litigation hold was eventually implemented on March 18, 2022, because "[t]he parties were discussing a potential extension of the earn-out provision, and those discussions looked like they weren't going well. At that point -- and they had gone fine beforehand and had not been contentious.... When they heated up in early 2022 and it started to go badly, BAE following its obligations said, [w]e're going to be conservative. They haven't filed a

[* 9]

Riptide relies solely on BAE's failure to institute a litigation hold which does "not amount to gross negligence per se," but is only one factor to be considered in determining the spoliator's state of mind. (*Pegasus Aviation I, Inc.*, 26 NY3d at 553.) Without more, a failure to institute a litigation hold and deletion of emails pursuant to the document retention policy, as happened here, would amount only to simple negligence. (*See SM v Plainedge Union Free Sch. Dist.*, 162 AD3d 814, 816, 818-19 [2d Dept 2018] ["The defendant acted negligently in unilaterally deciding to preserve only 24 seconds of footage and passively permitting the destruction of the remaining footage" which "was automatically erased 30 days after the accident" "[i]n keeping with the defendant's usual custom and practice"]; *TIAA Global Invs. LLC v One Astoria Sq. LLC*, 2016 NY Slip Op 31240[U], *8 [Sup Ct, NY County 2016] [finding simple negligence where defendants failed to institute litigation hold and deleted emails in normal course of business].) "[I]f the evidence is determined to have been negligently destroyed, the party seeking spoliation sanctions must establish that the destroyed documents were relevant to the party's claim or defense." (*Pegasus Aviation I, Inc.*, 26 NY3d at 547-48.) Riptide

---

complaint yet but, we're instituting a hold." (NYSCEF 255, tr at 40:22-41:6 oral argument].)

[* 10]

proffers no evidence of relevance of Jeffrey Smith's emails in the form of an affidavit or otherwise.

Accordingly, it is

ORDERED that the motion is denied; and it is further

ORDERED that summary judgment motions, if any, shall be filed within 30 days of the date of this decision and order.  (*See* NYSCEF 258, Sep. 2, 2024 Order.)

| 1/7/2025 | | | | ANDREA MASLEY, J.S.C. |
|----------|--|--|--|-----------------------|
| DATE | | | | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|------------|---|---------------|---|----------------------|--|
| | | GRANTED | X  DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

[* 11]