Battle v Fulton Park Site 4 Houses, Inc. (2026 NY Slip Op 00114)

Battle v Fulton Park Site 4 Houses, Inc.

2026 NY Slip Op 00114

Decided on January 14, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 14, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
ANGELA G. IANNACCI
LILLIAN WAN
JANICE A. TAYLOR, JJ.

2023-09853
 (Index No. 522542/21)

[*1]Anthony Battle, respondent, 
vFulton Park Site 4 Houses, Inc., et al., appellants.

Gerber Ciano Kelly Brady LLP, Garden City, NY (Kristin N. Moro of counsel), for appellants.
Pinkhasov & Associates, PLLC, Uniondale, NY (Paul Felicione of counsel), for respondent.

DECISION & ORDER
In an action to recover damages for personal injuries, the defendants appeal from an order of the Supreme Court, Kings County (Leon Ruchelsman, J.), dated July 31, 2023. The order, insofar as appealed from, granted that branch of the plaintiff's motion which was to impose sanctions upon the defendants for spoliation of evidence to the extent of precluding them from introducing certain evidence at trial.
ORDERED that the order is modified, on the law and in the exercise of discretion, by deleting therefrom the provision granting that branch of the plaintiff's motion which was to impose sanctions upon the defendants for spoliation of evidence to the extent of precluding them from introducing certain evidence at trial, and substituting therefor a provision granting that branch of the motion only to the extent of directing that an adverse inference charge be given against the defendants at the trial of this action with respect to a video recording of the underlying incident; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
The plaintiff was exiting a building owned or operated by the defendants when, according to the plaintiff, he pushed on a glass window in a door to open the door and the glass broke, lacerating his arm. Later that same day, Brianna Williams, an individual who worked for a security company employed by the defendants, viewed video surveillance footage allegedly depicting the subject incident. Based on those observations, Williams created an incident report, which stated that the plaintiff had broken the glass by punching it.
The plaintiff subsequently commenced this action to recover damages for personal injuries. After learning that the video surveillance footage of the incident viewed by Williams had been automatically erased, the plaintiff moved, inter alia, to impose sanctions upon the defendants for spoliation of evidence. By order dated July 31, 2023, the Supreme Court granted that branch of the plaintiff's motion to the extent of precluding the defendants from offering any evidence at trial or on a motion for summary judgment regarding any observations made from the destroyed video surveillance footage. The defendants appeal.
"Under the common-law doctrine of spoliation, when a party negligently loses or [*2]intentionally destroys key evidence, the responsible party may be sanctioned" (Dagro Assoc. II, LLC v Chevron U.S.A., Inc., 206 AD3d 793, 794 [internal quotation marks omitted]; see CPLR 3126). A party seeking sanctions for spoliation of evidence must show "that the party having control over the evidence possessed an obligation to preserve it at the time of its destruction" and that the evidence was destroyed either deliberately or negligently (Dagro Assoc. II, LLC v Chevron U.S.A., Inc., 206 AD3d at 794 [internal quotation marks omitted]). Further, in the event that the evidence was negligently destroyed, the movant must demonstrate "'that the destroyed [evidence] [was] relevant to the party's claim or defense'" (Eksarko v Associated Supermarket, 155 AD3d 826, 828, quoting Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d 543, 548).
Here, contrary to the defendants' contention, the plaintiff showed that the defendants had an obligation to preserve the video surveillance footage of the incident at the time that the footage was destroyed. Williams learned that the glass in the door was broken the same day that the incident occurred, and she investigated and documented it. Furthermore, the defendants' site manager testified at a deposition that the plaintiff's mother called after the incident to report that the plaintiff's arm had gone through the glass in the door, causing "severe injury," and that he was in the hospital. After receiving this report, the site manager testified, she spoke with Williams and learned that Williams had viewed video surveillance footage depicting the incident and had created an incident report. "Given the nature of the plaintiff's injuries and the immediate documentation and investigation into the accident by the defendants' employee[ ], the defendants were on notice of possible litigation and thus under an obligation to preserve any evidence that might be needed for future litigation" (M.M. v Macerich Prop. Mgt. Co., LLC, 219 AD3d 471, 472; see SM v Plainedge Union Free Sch. Dist., 162 AD3d 814, 818).
The plaintiff additionally demonstrated that the defendants had control over the evidence, which was on their computer system until erased (cf. Gaoming You v Rahmouni, 147 AD3d 729, 730), that they negligently failed to preserve the video surveillance footage, and that the footage was relevant to the plaintiff's claims (see Eksarko v Associated Supermarket, 155 AD3d at 828; Mendez v La Guacatala, Inc., 95 AD3d 1084, 1085). Accordingly, the plaintiff demonstrated that sanctions against the defendants were warranted for spoliation of evidence (see Eksarko v Associated Supermarket, 155 AD3d at 828; Peters v Hernandez, 142 AD3d 980, 981; Mendez v La Guacatala, Inc., 95 AD3d at 1085).
The determination of the appropriate sanction for spoliation of evidence is within the broad discretion of the Supreme Court (see Gaoming You v Rahmouni, 147 AD3d at 730). "The nature and severity of the sanction depends upon a number of factors, including, but not limited to, the knowledge and intent of the spoliator, the existence of proof of an explanation for the loss of the evidence, and the degree of prejudice to the opposing party" (Watson v 518 Pa. Hous. Dev. Fund Corp., 160 AD3d 907, 909 [internal quotation marks omitted]; see Samaroo v Bogopa Serv. Corp., 106 AD3d 713, 714).
Here, the Supreme Court improvidently exercised its discretion in precluding the defendants from presenting any evidence regarding Williams's observations of the video surveillance footage, as this sanction disproportionately eliminated their defense to this action. Instead, under the circumstances, including the negligent, rather than intentional, destruction of the video surveillance footage and the degree of prejudice to the plaintiff, the court should have directed that an adverse inference charge be given against the defendants at trial with respect to the video surveillance footage of the incident (see Eksarko v Associated Supermarket, 155 AD3d at 828; Peters v Hernandez, 142 AD3d at 981; Mendez v La Guacatala, Inc., 95 AD3d at 1085).
The plaintiff's remaining contention is not properly before this Court.
IANNACCI, WAN and TAYLOR, JJ., concur.
BARROS, J.P., concurs in part and dissents in part, and votes to affirm the order insofar as appealed from, with the following memorandum:
"Our state trial courts possess broad discretion to provide proportionate relief to a party deprived of lost or destroyed evidence, including the preclusion of proof favorable to the spoliator to restore balance to the litigation, requiring the spoliator to pay costs to the injured party associated with the development of replacement evidence, or employing an adverse inference instruction at the trial of the action" (Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d 543, 551; see Gaoming You v Rahmouni, 147 AD3d 729, 730). Such sanctions may include "the preclusion of proof favorable to the spoliator to restore balance to the litigation" (Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d at 551). The issue here is whether the Supreme Court improvidently exercised its discretion when, as a sanction for the spoliation of evidence, it precluded the defendants from admitting alleged observations by a security guard of video surveillance footage of an incident, which had been negligently destroyed by the defendants. The defendants contend that the destroyed evidence was favorable to them.
On October 25, 2020, at approximately 3:00 a.m., the plaintiff, who was taking care of his mother who was a tenant in a building owned by the defendants, left the building through a door with a push bar and a glass window. The lock on the door was broken such that the door could be opened without pushing on the push bar. According to the plaintiff, he pushed on the "center right" of the glass with "light" force to open the door and the glass broke, resulting in a laceration to his arm requiring surgery. The plaintiff's girlfriend was with him at the time of the incident, but she had exited through another door and had not seen the incident.
A security guard employed by CitySafe Partners, a security company, was regularly assigned as a security guard for the building. While doing a perimeter check later on the morning of the incident, the security guard observed the broken glass, reviewed video surveillance footage to see what had happened, and prepared an incident report, which stated that she observed someone "punching and breaking the glass." The incident report included a still photograph of the door's broken glass window. At her deposition in January 2023, the security guard had no independent recollection of viewing the video surveillance footage. She noted that "[a] lot of times, when these windows were broken, it was due to . . . fights that happened," and she did not recall any incidents involving broken windows that were accidents. When asked to describe the person she saw in the video surveillance footage, the security guard stated that "I can't recall the day of watching the video or even anything that might have happened in the video."
The defendants' site manager received a telephone call from the plaintiff's mother, reporting that the plaintiff's arm "went through" the glass of the door, causing "severe injury." Upon learning of this information that potentially could lead to litigation, the defendants' site manager went to the security office to inquire about the incident. The site manager spoke with the security guard, who reported that a person had punched the glass and that "she saw it on the camera footage." The site manager did not inquire about the video surveillance footage of the incident, never viewed the video surveillance footage, and could not remember if she had asked the security guard to preserve it.
In general, when an incident occurred at the building that was depicted on video surveillance, the "procedure" was for the security company to "record the video and save it." With respect to the subject incident, this procedure was not followed.
In this action to recover damages for personal injuries, the plaintiff moved to strike the defendants' answer for their spoliation of the video surveillance evidence, or, alternatively, for sanctions for spoliation of evidence in the form of an adverse inference charge and preclusion of the incident report and any testimonial evidence of the security guard's observations of the video surveillance footage of the incident. The defendants opposed the motion, asserting that there was insufficient evidence to show that they had intentionally deleted the video surveillance footage of the incident or that they had an obligation to preserve the video surveillance footage at the time it was destroyed since the incident was perceived as an act of vandalism that would not result in a lawsuit. However, as previously noted, the defendants were notified by the plaintiff's mother of information that potentially could lead to litigation and that information was the catalyst for the site manager asking the security guard what had happened and learning of the existence of the video [*3]surveillance footage of the incident. Thus, the defendants were under an obligation to preserve the video surveillance footage of the incident as evidence that might be needed for future litigation (see SM v Plainedge Union Free Sch. Dist., 162 AD3d 814, 818).
In an order dated July 31, 2023, the Supreme Court, among other things, granted that branch of the plaintiff's motion which was to impose sanctions upon the defendants for spoliation of evidence to the extent of precluding them from introducing evidence regarding Williams's observations of the video surveillance footage of the incident at trial. The court precluded proof allegedly "'favorable to the spoliator,'" which is one of the options available to "'restore balance to the litigation'" (Gregorian v New York Life Ins. Co., 211 AD3d 706, 709, quoting Ortega v City of New York, 9 NY3d 69, 76). My colleagues in the majority find that the sanction of preclusion in this case is too harsh.
It appears that the video surveillance footage of the incident was negligently, as distinguished from intentionally, destroyed. In the event that the evidence was negligently destroyed, the movant for sanctions must demonstrate "'that the destroyed [evidence] [was] relevant to the party's claim or defense'" (Eksarko v Associated Supermarket, 155 AD3d 826, 828, quoting Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d at 548) while the relevance of evidence that is intentionally destroyed is presumed (see Pegasus Aviation 1, Inc. v Varig Logistica S.A., 26 NY3d at 547). Here, whether the evidence was intentionally or negligently destroyed is not relevant to the question of the appropriate sanction, since the defendants have made the video surveillance footage of the incident relevant. The defendants have possession and control of the broken door that caused the plaintiff's injury and have preserved a still photograph of the door's broken glass window. The defendants potentially had a choice of available defenses, including lack of actual or constructive notice of any defect. However, they made the video surveillance footage of the incident relevant by contending that it proved that the plaintiff was at fault, which they have made the crux of their defense.
This court in Rokach v Taback (148 AD3d 1195) applied the sanction of preclusion where, as here, the defendants' defense was based upon observations of video surveillance footage of an incident that the defendants allowed to be erased due to their own negligence. This Court determined that "since the destruction of the evidence did not deprive the plaintiff of her ability to prove her claim so as to warrant the drastic sanction of striking the defendants' answer, the appropriate sanction for the spoliation herein is to preclude the defendants from offering any evidence in this action regarding the alleged contents of the erased surveillance video" (id. at 1196; see New York City Hous. Auth. v Pro Quest Sec., 108 AD3d 471).
In this case, my colleagues in the majority, contrary to the determination in Rokach v Taback (148 AD3d 1195), would permit the defendants to rely on video surveillance footage of the incident, which they destroyed, by presenting testimony as to an opinion of the security guard that that video surveillance footage showed the plaintiff intentionally breaking the door's glass window. Cross-examination of the security guard would have minimal value, since she testified at her deposition that she had no recollection of her observations. The security guard's opinion may have been based upon pure speculation, but, since the video surveillance footage of the incident has been destroyed, we will never know.
Allowing the defendants to use alleged observations of the video surveillance footage of the incident that they destroyed would reward negligent conduct and set a bad precedent that could encourage such conduct. An adverse inference charge could result only in confusion, since the jury would see the defendants present evidence favorable to them, to then be instructed that an adverse inference could be drawn against the defendants.
Under the facts of this case, limiting the sanction imposed to an adverse inference charge would not restore balance to the litigation (see Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d 543) but, rather, would reward the spoliator. Accordingly, I would affirm the order insofar as appealed from.
ENTER:
Darrell M. Joseph
Clerk of the Court